TOWN OF WEST HARTFORD *v.* JOSEPH P.
RECHEL ET AL.
(10181)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, JS.

Argued February 3—decision released May 10, 1983

*John R. Logan,* with whom, on the brief, was *Dwight O. Schweitzer,* for the appellants (defendants).

*Robert P. Volpe,* corporation counsel, for the appellee (plaintiff).

PETERS, J. The principal issue in this case is whether a municipality can be estopped from enforcing its zoning regulations because of a longstanding pattern of conduct permitting unauthorized uses of private property. The plaintiff town of West Hartford, acting by its building inspector, Edward A. Dombroskas, sued to enjoin the defendants Joseph P. Rechel and Shirley T. Rechel from operating two rooming houses in the town. After a court trial, a permanent injunction was issued, from which the defendants have appealed.

The underlying facts found by the trial court in its memorandum of decision are essentially undisputed. The two properties owned by the defendants are located at 55 Highland Street and 739 Prospect Avenue, in an area zoned by the town of West Hartford as an R-10 district, which is a one-family residential

district. In such a district, rooming or boarding houses are permitted only as accessory uses, if the owner uses the premises as his own residence and limits the number of roomers to three or less. Rooming houses as main uses, without an owner in residence, are now and have been, since at least 1925, totally forbidden. Even as accessory uses, rooming houses require appropriate town licenses. These zoning regulations, although adopted in their present form in 1968, do not vary materially from regulations first adopted in 1945. Before 1945, rooming houses were permitted as accessory uses without any limit on the number of roomers who might share the houses with their resident owners.

The history of the disputed properties reveals that, prior to 1941, they were used for single family purposes. At some time during the early 1940's, both properties were converted into rooming houses, in which substantial numbers of boarders received room and board, with the owner retaining an apartment on the premises.[1] Thereafter, the properties became rooming houses without an owner in residence, and were so operated by the defendants, who bought the house on Highland Street in 1962 and the other, on Prospect Avenue, in 1965.

From 1949 to 1967, the town issued rooming house licenses to the defendants and their predecessors in title.[2] Despite the receipt of properly submitted applications for subsequent years, the town refused thereafter to take any action to issue further licenses. The building inspector wrote the defendants in 1969 to inform them

[1] There was evidence that twenty or more boarders were living in one of the houses.

[2] In accordance with town ordinances, the building inspector charged with issuing rooming house licenses may do so only if "the location of said rooming house complies with the zoning regulations." West Hartford ordinance § 14.3.4. The building inspector is the town's zoning enforcement officer.

that their rooming houses, since they rented to more than three roomers, were not allowable uses in the town. The following year, however, town corporation counsel gave a formal opinion that the defendants' properties, because of their history of continuing use as boarding houses, qualified as legal nonconforming uses.[3] Despite that opinion, the town brought the present lawsuit in 1975.

The trial court, upon reviewing this finding of facts, came to the following conclusions of law. The properties were not, and never had been, operated as legal accessory uses. When first converted to rooming house use, the number of boarders was so disproportionate to the residential uses of the principal occupants that the uses did not qualify as accessory uses. Furthermore, even if the early uses had been accessory in nature, they had thereafter lost their accessory character by abandonment. The defendants, having themselves never resided on the properties and having operated them as businesses for the generation of income from roomers, could no longer rely on the prior uses. After abandonment, a prior legal use is lost and cannot be revived. *Blum* v. *Lisbon Leasing Corporation,* 173 Conn. 175, 181, 377 A.2d 280 (1977). The defendants had therefore failed to prove their special defense of "prior legal nonconforming use."

The trial court further concluded that the defendants could not prevail on their equitable defenses of laches and estoppel. With respect to laches, the court determined that the town had not unreasonably delayed its enforcement of its 1968 ordinances. With respect to estoppel, the court expressed doubt about the availabil-

---

[3] In 1959, corporation counsel had issued a similar opinion for the Prospect Avenue property.

ity of such a defense against a municipality and found an absence of "hard evidence" that the defendants had suffered any loss "because of any action of the town."

Finally, the trial court rejected the defendants' argument that the town had so far abandoned its zoning plan in the immediate area of the defendants' properties that enforcement of its regulations against the defendants was arbitrary and capricious. Having viewed the properties and the neighborhood, the court found no evidence either of abandonment of the town plan or of arbitrariness in its enforcement.

In their appeal from the trial court's order permanently enjoining their use of 55 Highland Street and 739 Prospect Avenue as rooming or boarding houses in violation of Article 4 of the town zoning regulations, the defendants rely principally on their arguments of estoppel and laches although they also contest the conclusion that they had not proven their acquisition of a nonconforming use.[4] We shall consider these claims in the reverse order, taking up first the question of legal nonconforming use.

With regard to the legal status of their properties, the defendants now concede that they can prevail only if they can establish that the houses were actually used as accessory rooming houses before 1945. They dispute the trial court's contrary finding by pointing to evidence that the houses were in fact used as rooming houses in 1943 and 1948. This evidence is supported, they claim, by the town's subsequent issuance of rooming house licenses, which creates a presumption that the houses complied with the town's zoning ordinances.

[4] The appeal does not directly take issue with the trial court's conclusion that there was nothing capricious or arbitrary in the town's decision to enforce its zoning regulations against them. The defendants do, however, advert to the character of the surrounding neighborhood in their claim of estoppel.

The fallacy in this argument is that it fails to overcome the trial court's finding that the rooming houses were being operated illegally as main uses, rather than legally as accessory uses, in the years at issue. It was not sufficient to establish that the owners then resided in the rooming houses. The defendants have not directly challenged the trial court's factual finding that there was a disproportion between the number of boarders and the resident owners but dispute instead its consequent conclusion that such a disproportion prevented the boarding uses from being "accessory." The defendants argue that such disproportion is irrelevant since it was not until 1945 that the town limited to three the number of roomers who could legally be housed in a residential accessory rooming house. It does not, however, follow that accessory use had no numerical limitation whatsoever before 1945. The trial court was, in our view, entirely within its province in inferring that the concept of accessory use necessarily required an inquiry into the extent to which actual uses were incidental to the underlying permitted residential uses of the property. See *Lawrence* v. *Zoning Board of Appeals,* 158 Conn. 509, 511–13, 264 A.2d 552 (1969); *Fox* v. *Zoning Board of Appeals,* 146 Conn. 70, 74–75, 147 A.2d 472 (1958). We therefore find no error in the trial court's conclusion that the properties, while they became rooming houses, were never operated as accessory uses in conformity with applicable town regulations.

The defendants' remaining arguments with respect to legal nonconforming uses cannot survive, once this first conclusion of the trial court is upheld. Subsequent town licensing is important for the defendants' claims of estoppel but cannot per se convert illegal main uses into legal accessory uses. Given the other facts found by the trial court, the court was entitled to find that

any presumption of legality attaching to the issuance of the licenses had been adequately rebutted by the town's evidence of continued illegal uses. Finally, we need not review the defendants' claims that they never intended to abandon any legal uses of their property, since they are unable to prevail on nonabandonment without first establishing as its predicate the prior legality of the uses they seek to preserve.

We turn then to the defendants' claim that the equitable principle of laches makes it improper for the town to enjoin their rooming houses even if these rooming houses are otherwise unauthorized under town regulations. The defendants acknowledge that *Bianco v. Darien,* 157 Conn. 548, 556, 254 A.2d 898 (1969), permitting a town to enforce its zoning ordinances after a thirty-six year lapse, stands in the way of their recovery on this theory. Whether we conclude, as did the trial court, that the town is enforcing its 1968 zoning enactments or, as the defendants maintain, its similar 1924 and 1945 ordinances, we are not prepared, in the circumstances of this case, to overrule our holding in *Bianco* that "[a] zoning commission 'is not estopped by laches from enforcing its zoning laws.' " Id.; see 3 Rathkopf, Law of Zoning and Planning (4th Ed. 1982) § 45.05[2].

A defense based on laches would have us focus on the effect of inaction, of the mere passage of time. See 9 McQuillin, Municipal Corporations (3d Rev. Ed. 1978) § 27.56. The defendants' final argument, however, focuses on affirmative conduct of the town which, they maintain, was of such a character as now to estop the town from obtaining an equitable remedy against them.

This court has recently restated the law of municipal estoppel. In *Zoning Commission* v. *Lescynski,* 188 Conn. 724, 731–32, 453 A.2d 1144 (1982), we held that, in special circumstances, a municipality may be estopped from enforcing its zoning regulations. We recognized that estoppel always requires "proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. *Bozzi* v. *Bozzi,* 177 Conn. 232, 242, 413 A.2d 834 (1979); *Dupuis* v. *Submarine Base Credit Union, Inc.,* 170 Conn. 344, 353, 365 A.2d 1093 (1976); *Pet Care Products, Inc.* v. *Barnett,* 150 Conn. 42, 53–54, 184 A.2d 797 (1962)." *Zoning Commission* v. *Lescynski,* supra, 731. In municipal zoning cases, however, estoppel may be invoked "(1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations. *Dupuis* v. *Submarine Base Credit Union, Inc.,* supra, 354." Id., 732; see also 8A McQuillin, Municipal Corporations (3d Rev. Ed. 1976) § 25.349; 9 McQuillin, supra, § 27.56; 3 Rathkopf, Law of Zoning and Planning (4th Ed. 1982) § 45.05[1] [b].

*Lescynski* puts to rest some of the controversy surrounding zoning estoppel. Contrary to the view of the plaintiff, a municipality can be estopped by erroneous acts of its officers from enforcing its zoning ordinances, as long as those officers act within the scope of their authority. The determination that the town's building inspector (who was also its zoning enforcement officer) acted erroneously in issuing rooming house licenses for

the premises in question does not, therefore, defeat the defendants' claim of estoppel. See *Town of Largo* v. *Imperial Homes Corporation,* 309 So. 2d 571, 574 (Fla. App. 1975); *Cities Service Oil Co.* v. *City of Des Plaines,* 21 Ill. 2d 157, 160–63, 171 N.E.2d 605 (1961); *Abbeville Arms* v. *City of Abbeville,* 273 S.C. 491, 494, 257 S.E.2d 716 (1979); see also 3 McQuillin, Municipal Corporations (3d Rev. Ed. 1982) § 12.126a; 3 Rathkopf, supra, § 45.05[3] [b]. The building inspector was, pursuant to town ordinances, the proper person to issue such licenses and the proper person to certify that the rooming house was or would be in compliance with existing zoning regulations. Any other construction of who is "an agent having authority in such matters"; *Lescynski,* supra, 732; would entirely defeat any and all claims of estoppel. Had the municipal agent's conduct been in conformity with zoning regulations, his legally authorized acts would automatically have conferred indefeasible rights upon the claimant. It is only when the municipal agent acts in good faith,[5] within the scope of his authority, but in error, that the occasion for invocation of estoppel can arise. See *Jantausch* v. *Verona,* 41 N.J. Super. 89, 95, 124 A.2d 14 (1956), aff'd, 24 N.J. 326, 131 A.2d 881 (1957); see also 3 Rathkopf, supra, § 45.05[3] [d].

The defendants therefore have a right, pursuant to *Lescynski,* to a defense based upon estoppel, if they can factually demonstrate its remaining components. The final question before us, therefore, is whether they have satisfied this substantial burden of proof. The defendants were required to show that the agents of the town acted to induce their reliance and that the defendants relied on the town's actions to their detriment to such

[5] The trial court's ruling that the properties had never achieved a legal accessory use, while correct, was not so obvious a conclusion that the town's officials (or the defendants) can be faulted for having failed to anticipate it.

an extent that enforcement of the town's zoning regulations would be "highly inequitable or oppressive." *Zoning Commission* v. *Lescynski,* supra, 732.

The trial court's determination that the defendants failed to establish their defense of estoppel appears to have been derived in part from its conclusion that zoning estoppel would never bind a municipality. That conclusion, reached before our decision in *Lescynski,* was in error. The trial court went on, however, to conclude in the alternative that the defendants had failed to prove that they had suffered "a loss by any action of the town." In context, the court seems to have found a failure to show intentional action by the town calculated to induce reliance on the part of the defendants.[6] On this basis, the court found it unnecessary to deliberate the other criteria of estoppel which the defendants would have had to establish before their defense could prevail.

The facts upon which the defendants rely to show inducement are the rooming house licenses issued from 1949 to 1966, whose legitimacy was attested by two separate opinions of two town corporation counsel, one in 1957 and one in 1970. The defendants testified without contradiction that they inquired into the availability of rooming house licenses before they bought their properties. They applied for a license for one of the houses in 1962 while they were still negotiating its purchase. Even though the building inspector had no personal contact with the defendants, he was fully aware of the uses to which the defendants and their predecessors in title intended to put the property. In these circumstances the pattern of officially licensing the properties as rooming houses constituted an inducement to the defendants to purchase them for

---

[6] Due to the death of the trial court judge while this appeal was pending, we cannot remand for further articulation of the memorandum of decision.

the same purpose. Inducement for the purposes of estoppel requires a mental state which is a general intent to act rather than a special intent to mislead. It is sufficient if actions are taken with an awareness that they would be relied upon; it is not necessary to prove that the actions were intended knowingly to mislead the party claiming estoppel. See *Evanston* v. *Robbins,* 117 Ill. App. 2d 278, 286, 254 N.E.2d 536 (1969). The trial court's ruling to the contrary was therefore in error.

The facts found by the trial court similarly establish that the defendants did not fail to exercise due diligence when they relied upon the conduct of the town. While it may be true, as the plaintiff argues, that the relevant town ordinances were available for the defendants' inspection, it is equally true that the defendants, as lay persons, could not reasonably be expected to detect problems with apparent prior conforming uses that two separate corporation counsel had been unable to uncover. In the circumstances, it was not unreasonable for the defendants to assume that the rooming houses which they were purchasing constituted legal rather than illegal nonconforming uses. Although the plaintiff takes the defendants to task for undertaking "an obviously incomplete and inadequate investigation," the plaintiff does not specify what more the defendants should have done. This element of estoppel is therefore also proven.

The final element of estoppel which the trial court did not reach cannot however be determined on the present record. As we have previously noted, the defendants must show not only unjustifiable inducement but also reliance of such a nature that it would be "highly inequitable or oppressive to enforce the [town's zoning] regulations." *Zoning Commission* v. *Lescynski,* 188 Conn. 724, 732, 453 A.2d 1144 (1982).

On the issue of reliance, the record discloses testimony by the defendants that the market value of their properties reflected their assumed rooming house status, and that their properties had been altered by substantial expenditures consistent with their boarding house use. The record further discloses a neighborhood which, despite some nonresidential uses, the trial court, after inspection, found not inconsistent with town enforcement of rooming house zoning regulations. There is, however, nothing before us to show that in granting the injunction, the trial court undertook the process of weighing competing equitable considerations to determine whether the town's conduct, the extent of the defendants' reliance and the condition of the neighborhood, warranted the equitable relief sought by the town. Such a weighing process involves the exercise of discretion by the trier of fact and not by an appellate tribunal. Because we cannot tell whether this is one of the special cases in which zoning estoppel, although only invoked with great caution, is appropriate, there must be a new trial on this remaining aspect of the defense of estoppel.

We recognize that this litigation has been of long duration. Our remand is not intended to permit retrial of anything other than that aspect of estoppel which requires the defendants to prove so substantial a loss that the award of injunctive relief to enforce the town's zoning regulations would, in light of all the circumstances, be highly inequitable or oppressive.

There is error, the judgment is set aside, and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.