[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This appeal challenges a decision of the defendant Branford Zoning Board of Appeals (hereinafter referred to as the "ZBA") which let stand a Cease And Desist Order issued by the defendant Justine Gillen, the Zoning Enforcement Officer (hereinafter referred to as the "ZEO").
In that order dated July 11, 1989, the ZEO sought to terminate a variety of activities which were allegedly conducted by the plaintiff Ivan Sachs on property owned by his wife, Rita Sachs.
The plaintiffs claim that their present use of the property constitutes a valid non-conforming use which predated the adoption of zoning in the town of Branford. They also argue laches on the part of the town in tardily issuing the order in question and further allege the order is invalid because it was not signed by the ZEO.
 I.
The court finds that the plaintiff Ivan Sachs is aggrieved by virtue of the fact that his business activities would be CT Page 3586 curtailed or terminated if the cease and desist order were found to be valid and enforceable.
The plaintiff Rita Sachs is aggrieved because she is the owner of the real property on which Ivan Sachs conducts his business and the order directly affects the use to which the property may be put.
 II.
The plaintiffs rely on 3.1 of the Branford Zoning regulations to support their claim of invalidity because the cease and desist order was not signed by the ZEO. The regulation in question reads as follows:
 "No applications for a Certificate of Zoning Compliance shall be approved and no Certificate of Zoning Compliance, order or other zoning enforcement document shall be issued unless signed or countersigned by the Zoning Enforcement Officer or a Deputy Zoning Enforcement Officer."
An obvious purpose of such a regulation is to insure that any approvals or orders are authentic — that is, that the proper person granted the approval or issued the order. Unsigned documents are certainly open to question and lend themselves to improper use or erroneous reliance.
In the present situation, there is no question that the order was intended to be issued and was issued by the ZEO. Though the space provided for a signature was left blank, an examination of the hearing transcript indicates the ZEO affirmed and ratified her actions in determining the order should issue and in issuing it. It should be noted that the document was not totally lacking in indicia of authentication. The ZEO did execute the portion of the order dealing with service on the plaintiffs.
It is thus clear that the omission of the signature was inadvertent. Lacking any claim that the plaintiffs were in any way misled or otherwise prejudiced by the omission, this claim must fail.
 III
The principal issue to be determined in this proceeding is whether the plaintiff Ivan Sachs has established the existence of a non-conforming use which use pre-dated the adoption of the first zoning code in December 3, 1956. The particular use the plaintiff claims is for a contracting and excavating business. CT Page 3587
The burden is on the claimants to establish that the non-conforming use was in existence on December 3, 1956. Friedson v. Westport, 181 Conn. 230, 234 (1980); Cummings v. Tripp, 204 Conn. 67,82 (1987).
In attempting to evaluate this claim, the court was handicapped by an absence of specific dates, with specificity lacking even as to years in many critical areas.
The plaintiffs rely on exhibit 7 which consists of 10 building permits for various types of development. Because of the numbers placed on them by the town, it is clear that many of these permits preceded the 1956 code.
However, an examination of them does not indicate a contracting and excavating business was being operated on the tract. They do confirm what the plaintiffs testified to and filed- affidavits to support — viz., that in the 1950's it was determined that the construction of Interstate Route 95 through Branford would seriously impede the continued operation of their large dairy farm and the time had come to develop the tract into commercial uses of one type or another. With sales of material from the site to the state, and the demolition of barns and sheds (permits #1119 and #926) the project commenced. On permit #1267, the simple description "Shopping Center" appears. On October 4, 1956 "420 Apartments" were applied for under the first dated permit, #1314.
Simply stated, nothing on these permits supports the plaintiffs' contentions of the operation of this business or businesses on this site or a portion of it except as the activities were incidental to the various physical changes performed on the site and made to the complexes created.
The plaintiffs' presentation and arguments are noteworthy for the absence of evidence which could easily support their claims. Not one business record, corporate record, letterhead, invoice, contract, tax return, customer list, etc. was offered to show that a business was operating on this site independently of this massive development.
The court finds this to be significant because of the requirement that for a non-conforming use to be "in existence" at the time of the relevant zone change, the "premises must be so utilized as to be known in the neighborhood as employed for a given purpose." Helicopter Associates, Inc. v. Stamford,210 Conn. 700, 713 (1986).
Whenever the Sachs brothers started to develop this site CT Page 3588 (they do not offer an exact year), the "neighborhood" would obviously have been aware of grading, scraping top-soil, filling in low areas, and laying out site, to construct a shopping center, apartments, dwellings, a warehouse, and a "hamburg stand." All of these activities were visible on the site. There is no suggestion from this beehive of activity that logically should have put the neighborhood on notice that the construction, excavating etc. activity then taking place on the site was permanently established there and would operate all over this area of the state from this "base." The neighborhood could assume from what it could perceive that this type of activity would end when the tract was developed.
It is well established that for a non-conforming use to be found to have existed at the time a zoning code was adopted, the parcel must be "irrevocably committed" for the use claimed. One indication of such irrevocable commitment would be a significant amount of preliminary or preparatory work done on the property prior to enactment of the zoning regulations which unequivocally indicates that the property was going to be used for that particular purpose. Karla v. Alexandra Realty Corporation,179 Conn. 390, 399 (1980); citing, Sherman-Colonial Realty Corporation v. Goldsmith, 155 Conn. 175, 184; Lebanon v. Woods, 153 Conn. 182,197; and Wallingford v. Roberts, 145 Conn. 682, 684.
The only structure that could be remotely considered as committing the original tract or the 4 acre parcel to the claimed use was described by the plaintiff Ivan Sachs as a "temporary garage" measuring 10 x 15 feet which he said was used to repair vehicles and equipment working on the development of the tract. (Testimony of 8/20/90 and Exhibit N).
The court concludes that neither the original tract nor the 4 acre parcel in question were irrevocably committed to the business uses claimed by the plaintiffs. The plaintiffs had not performed sufficient acts and the premises were not so prepared and utilized that they could be known in the neighborhood as being employed for the purposes alleged. Fairlawns Cemetery Assn., Inc. v. Zoning Commission, 138 Conn. 434, 444 (1952).
Since the plaintiffs failed to prove either that the activity which they allege to be non-conforming pre-dated the adoption of the zoning regulations in 1956, or that said activity was in fact a construction-excavating business which is presently "non-conforming," the ZBA acted properly and with valid reasons in upholding the ZEO's orders.
The ZBA also had evidence before it which contradicted the plaintiffs' claims of a continuous business operation on the 4 acre parcel which is the subject of this action. Mr. Jack Cheeseman, who claimed to be well acquainted with the entire CT Page 3589 Cherry Hill parcel since 1957, denied there had been a continuous operation of a business on the site in question.
The ZEO presented a 1959 aerial photo (Exhibit N) which Mr. Sachs claimed showed the "temporary garage" and equipment stored on the premises. Mr. Cheeseman referred to any equipment stored on the property as in a "junked" condition, worthless and unsuitable for use in construction.
As was the case in their claim of the existence of a non-conforming use, the plaintiffs did not present a single document to support their claims or to rebut Mr. Cheeseman's claims as to the continuous operation of a construction business on the site in question since the conclusion of the development of the Cherry Hill parcel.
The court concludes that there was evidence to support the action of the ZBA in upholding the cease and desist orders.
 IV
The plaintiffs also urge the court to find that the order in question should be barred, invoking the doctrine of estoppel and laches against the town.
The plaintiffs cite Connecticut cases which hold that generally, estoppel and laches will not prevent a municipality from enforcing its going regulations. They contend that the facts of this case warrant that an exception be made, citing Hartford v. Rechel, 190 Conn. 114, 121 (1983).
In that case, the court noted a town or city may be estopped, inter alia, "only when special circumstances make it highly inequitable or oppressive to enforce the regulations." Id.
The "special circumstances" the plaintiffs rely on include the issuance of "a series of building permits" authorizing construction and development on the tract of which the parcel in question was a part and the "massive excavation and construction" occurring on the tract. This, plus the issuance in 1960 of a permit for construction of a garage and "the fact that over thirty-five years have elapsed since the initiation of their use" constitute the basis for the claim that it would be inequitable and oppressive to allow the ZEO's order to stand. These claims will be considered in turn.
Of the ten permits the plaintiffs rely on, four are undated. Taken in the aggregate, however, they support the plaintiffs' basic contention that over a period of several years in the 1950's the plaintiffs or their predecessors in interest were developing CT Page 3590 the large parcel they owned, changing a dairy farm into multi-use complex. As part of this conversion of the tract into sites for a shopping center (exact year unstated), 420 apartments (October 1956), a warehouse (1958, after zoning code adoption), and a "hamburg stand" (1959), they scraped, filled, excavated and changed contours.
This court does not doubt and there appears to be no question about the extensive activity the plaintiffs claim to have conducted. However, the court finds a flaw in the plaintiffs' premise that the development of this large tract and the operation of their various businesses was the same.
What these permits indicate is that the plaintiffs engaged in extensive site work to convert a former dairy farm to a variety of commercial uses. In the process, they scraped top-soil, sold fill that resulted from grading, and moved fill to fill in low spots. But they do not indicate that an independent business or businesses were conducted on the site. This significant difference was noted by members of the ZBA in their deliberations on this application.
The issuance of the 1960 permit for the construction of a garage is not indicative of the existence of the non-conforming use. Nor does the issuance of this single permit suggest, as the plaintiffs seem to claim, that a town official was acknowledging all these claimed business uses were valid. Such unauthorized acts cannot be the cause of estoppel being invoked against the town. Zoning Commission v. Lescynski, 188 Conn. 724, 733 (1982). Citations omitted.
As for the claim that the passage of some 35 years without hinderance [hindrance] by the town is such a circumstance that enforcement now would be inequitable, the plaintiffs cited no law to support the proposition that if one escapes detection for several years, he has some vested right to a continued zoning violation. Passage of time is not an element which permits estoppel for laches to be invoked against a municipality. Dupuis v. Submarine Base Credit Union, Inc., 170 Conn. 344 (1976).
The town's alleged delay in proceeding against the plaintiffs cannot be deemed to have waived the duty owed to the public to compel compliance with the zoning regulations. Wallingford v. Roberts, 145 Conn. 682, 685 (1958); citations omitted.
As an alternative theory, the plaintiffs maintain that their use of this tract of land was a permitted one under the zoning regulations in force between 1956 and 1973. (The regulations were amended in 1973). CT Page 3591
The parcel in question along with the tract that they started to develop in the 1950's was zoned "C-1," i.e., a "Highway Commerce Zone," in this particular revision of the zoning code.
An examination of the regulations reveals the C-1 zone to be essentially a retail and service area. The plaintiffs' claim that site clearing, excavating, storage of fill, etc. was permitted in that zone lacks substantiation.
The fact that the plaintiffs may have repaired their heavy equipment on the site could not be remotely interpreted as the operation of "an automobile repair shop," permitted under the Code's C-1 classification.
"Such a grasping for straws does little to indicate strength in the plaintiffs' appeal." Ramos Iron Works, Inc. v. Franklin Construction Co., 174 Conn. 583, 586 (1978).
The other permitted uses in C-1 were: "Other retail stores and service establishments not permitted in LS above including animal hospitals and rental of horses, building materials and monuments." (Emphasis added).
The ZBA did not act arbitrarily but in fact had a reasonable basis in the form of the 1956 Code to refuse to find the plaintiffs' activities were permitted by the code in effect between 1956 and 1973.
CONCLUSION
In view of the findings and conclusion expressed above, the appeal is dismissed.
ANTHONY V. DeMAYO, JUDGE