[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Christopher J. Hallahan and Elaine Caulkins, appeal the decision of the Defendant, Westbrook Zoning Board of Appeals (the Board), to uphold a Cease and Desist Order issued by the Westbrook Zoning Enforcement Officer (ZEO). Additional CT Page 2808 defendants are James R. Taylor, the former Westbrook ZEO who issued the Cease and Desist Order, and Carol Montalto, a neighboring landowner. The parties have filed briefs and argument was heard by this court on December 3, 1998. For the reasons stated below, the appeal is sustained.
 I. FACTS
The record reveals the following facts. The subject property is located in a Medium Density Residential Zoning District (MDR). turn of Record [ROR], Item 11.)
The Westbrook Zoning Regulations were adopted on August 28, 1956. (Westbrook Zoning Regulations [Regs] § 1.00.02.) The Regulations provide that any use not specifically permitted in the Regulations is prohibited. (Regs § 2.00.01.) It is undisputed that the use at issue in this case is not specifically permitted in the MDR zone. (Regs § 4.20.01.)
Tracing the ownership and usage of the subject property back prior to the adoption of the Regulations, it is revealed that the Grand List of October 1, 1956 listed the subject property to Antonio Fossie "as sprout and swamp land." (ROR, Item 41.) Additionally, the record contains a contract between the Estate of Antonio Fossie and the Lane Construction Company, approved on August 1, 1956, permitting Lane to deposit waste materials from highway construction projects on the subject property. (ROR, Item 35.) The record is devoid of evidence that the activity permitted by this contract actually occurred prior to August 28, 1956.
Francis J. Spreda and Marion S. Spreda purchased the subject property from the Estate of Antonio Fossie on December 27, 1956. (ROR, Item 47.) Mr. Spreda's daughter, Sheryl Magnano, testified at the public hearing that, while her father was in the process of purchasing the property, but before the actual purchase, her father "widened the road, making the access better, pushing away some of the brush, pushing the piles of dirt up" on the subject property. (ROR, Item 8, p. 10-11.) The transcript is replete with evidence that Mr. Spreda did operate an earth and asphalt products business on the subject property until his death in 1987. (ROR, Item 8.)
The plaintiff, Mr. Hallahan, was employed by Mr. Spreda beginning in 1978. (ROR, Item 8, p. 12.) Mr. Spreda and Mr. Hallahan eventually became partners until Mr. Spreda's death, at CT Page 2809 which time Mr. Hallahan took over the business. (ROR, Item 8, p. 12-15.)
The plaintiff, Elaine Caulkins, inherited the subject property from Mr. Spreda by Certificate of Devise dated December 14, 1989. (ROR, Item 45.) Mr. Hallahan purchased a one-half interest in the subject property on February 14, 1990. (ROR, Item 46.) Mr. Hallahan continued the earth and asphalt processing business.
At some point in 1992, Mr. Hallahan desired to enter into contracts with the state. As a prerequisite to the execution of these contracts, Mr. Hallahan sought and obtained letters from both ZEO Elaine Bruckner and ZEO James Taylor, all of which clearly indicate that at various times between July of 1992 and May of 1996, there were no zoning violations on the subject property and the operation conducted thereon constituted a pre-existing, non-conforming use. (ROR, Items 17, 18, 19, 20.)
Most notable, the letter dated May 9, 1996 from ZEO Taylor acknowledges a recent increase in traffic and activity on the subject property due to construction on I-95. The letter further notes that a prior ZEO had determined that this operation had been in existence before the enactment of zoning, and the undersigned ZEO confirmed that the operation was a pre-existing, non-conforming use. Finally, the letter clearly states that no zoning violations exist on the subject property and "[t]he intensification of this use for a short period of time does not constitute an expansion of a non conforming use." (ROR, Item 20.)
On August 15, 1996, ZEO Taylor issued a Cease and Desist Order requiring that the plaintiffs cease the "storage and recycling of earth and asphalt products in MDR zone" and remove "all products and equipment from the site." (ROR, Item 11.) The letter from ZEO Taylor accompanying the order notes that neighboring residents, by complaint dated May 21, 1996, requested that the Zoning Commission take action to end the zoning violation on the subject property. The letter outlines information received by the ZEO indicating that the subject operation did not predate the zoning regulations and, as a result, is an illegal use which must cease to operate.
The plaintiffs appealed the Cease and Desist Order to the defendant Board pursuant to General Statutes § 8-6 (a) (1)[1] and § 8-7[2]. (ROR, Item 9.) On October 23, 1996, CT Page 2810 the Board held a public hearing, which was declared "closed" on the same date. (ROR: Item 7; Item 8, p. 76.) At a special meeting of the Board on October 30, 1996, the Board voted three to two to uphold the Cease and Desist Order. (ROR, Item 6.) The minutes reflect that "[t]he members voting in favor felt the applicant had not shown that this use existed prior to the adoption of the Zoning Regulations." (ROR, Item 6.)
On December 5, 1996, after timely service of process, the plaintiffs filed this present appeal pursuant to General Statutes § 8-8 (b). On July 21, 1997, the plaintiffs filed their First Amended Appeal in two counts. The first count claims that the Board acted illegally, arbitrarily and in abuse of its discretion by upholding the Cease and Desist Order in that the Board failed to determine that (1) the storage and recycling of earth and asphalt products are permitted as a valid non-conforming use; (2) the Board is estopped from issuing and upholding the Cease and Desist Order because of express permission given for the prohibited activity by two Zoning Enforcement Officers; (3) the Board is prohibited from issuing and upholding the Cease and Desist Order because of Laches[3]; (4) the Board's action was not based on substantial evidence; and (5) such other errors of law and fact which the record may reveal. (Plaintiffs' Appeal, p. 3.) The second count claims that the plaintiffs are entitled to continue the subject use pursuant to Subsection 3(b) ofPublic Act 97-296.
On November 12, 1997, the Board and ZEO Taylor filed their answers. On January 23, 1998, the defendant Carol Montalto filed her answer. After a number of motions for extension of time, the plaintiffs filed their brief on December 9, 1998, the defendant Montalto filed her brief on January 23, 1998, and the defendant Board filed its brief on January 26, 1998. This court has carefully considered the testimony and evidence contained in the entire record, the parties' briefs and their oral arguments.
 II. Jurisdiction
Appeals from a decision of a zoning board may be taken to the superior court. General Statutes § 8-8 (b). "Appeals to courts from administrative agencies exist only under statutory authority. . . . A statutory right to appeal must be taken advantage of only by strict compliance with the statutory provisions by which it is created. . . . Such provisions are mandatory, and, if not complied with, the appeal is subject to CT Page 2811 dismissal. . . ." (Citations omitted; internal quotations marks omitted.) Office of Consumer Counsel v. Department of PublicUtility Control, 234 Conn. 624, 640, 662 A.2d 1251 (1995).
 A. Aggrievement
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planningand Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953 (1991);DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369, 373,588 A.2d 244 (1991). "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) Connecticut Resources RecoveryAuthority v. Planning Zoning Commission, 225 Conn. 731, 739
n. 12, 626 A.2d 705 (1993).
An owner of property which forms the subject matter of the application to the board is aggrieved. Winchester WoodsAssociates v. Planning and Zoning Commission, supra,219 Conn. 308. At trial, the plaintiff, Mr. Hallahan, testified to his ownership of the subject property and submitted a certified copy of the deed, which indicates that he and Ms. Caulkins are the owners of the subject property. (Exhibit 1.) Accordingly, this court finds that the plaintiffs are aggrieved.
 B. Timeliness and Service of Process
General Statutes § 8-8 (b) requires that an appeal from a decision of a zoning board "shall be commenced by service of process [on the chairperson of the board and the clerk of the municipality] within fifteen days from the date the notice of the decision was published. . . ." See General Statutes §§ 8-8
(b), (e) and (f).
On October 30, 1996, the Board voted three to two to uphold the Cease and Desist Order. (ROR, Item 6.) Legal Notice of the Board's decision was published in the Shoreliner East on November 9, 1996. (ROR, Item 7.)
This appeal was served on Assistant Town Clerk Sue D. Clements on November 21, 1996 and on Chairperson John L. Hall, III on November 22, 1996. (Sheriff's Return of Service.) Additionally, on November 21, 1996, this appeal was served on the named defendant, James R. Taylor, Zoning Enforcement Officer. CT Page 2812 (Sheriff's Return of Service.) Accordingly, the court also finds that the appeal was timely served on the appropriate parties.
Consequently, since this court has found that the plaintiffs are aggrieved and that this appeal was timely served on the proper parties, this court has jurisdiction.
 III. Scope of Review
An appeal from an action of a zoning enforcement officer is taken to the zoning board of appeals, which hears and decides the matter de novo. Caserta v. Zoning Board of Appeals, 226 Conn. 80,88-89, 626 A.2d 744 (1993). Thereafter, a court, in deciding the appeal of the board's decision, must focus on the board's decision and the record before the board. Id., 80. "[T]he same test as applied for judicial review of a special permit or variance would apply to appeals from the zoning board of appeals on its review of the action of the zoning enforcement officer" R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 33.7, p. 577.
"[U]pon appeal, the trial court reviews the record before the [board] to determine whether it has acted fairly or with proper motives or upon valid reasons. . . ." (Internal quotation marks omitted.) Spero v. Zoning Board of Appeals, 217 Conn. 435, 440,586 A.2d 590 (1991). When the decision of an administrative agency is challenged, "[t]he burden of proof is on the plaintiff to demonstrate that the board acted improperly." Id. "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." Id.
"In appeals from administrative zoning decisions, . . . the decisions will be invalidated . . . if they were not supported by `substantial' evidence in that record. . . . The `substantial evidence' standard requires enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." (Internal quotation marks omitted.) Kaufman v. ZoningCommission, 232 Conn. 122, 151, 653 A.2d 798 (1995). "The question is not whether the trial court would have reached the same conclusion, but whether the record before the [board] supports the decision reached. . . . The action of the [board] should be sustained if even one of the stated reasons is sufficient to support it." (Citations omitted; Internal quotation CT Page 2813 marks omitted.) Property Group. Inc. v. Planning ZoningCommission, 226 Conn. 684, 697, 628 A.2d 1277 (1993).
 IV. Discussion
A. Count One
1. Valid, Non-Conforming Use
First, the plaintiffs claim that the present use of the subject property is a valid, non-conforming use because the use predated the enactment of the Westbrook Zoning Regulations. In voting to uphold the Cease and Desist Order, the Board determined that the plaintiffs herein had not shown that the present use of the subject property predated the adoption of the Westbrook Zoning Regulations. The court agrees with the Board.
There is substantial evidence in the record indicating that the earth and asphalt products operation commenced after the date of the adoption of the Westbrook Zoning Regulations. Mr. Spreda, the individual who commenced the subject operation, did not take ownership of the subject property until after the adoption of the Regulations. (ROR, Item 47.) While there is evidence in the record that he did some clearing of brush and moving of dirt on the subject property prior to his ownership, (ROR, Item 8, p. 10-11.) these activities do not constitute the earth and asphalt products operation that is the subject of this case.
Additionally, the contract between Lane Construction and the Estate of Antonio Fossie did predate the Regulations and contemplated an operation at least similar to the operation at issue herein. (ROR, Item 35.) Nevertheless, there is no evidence in the record that Lane Construction ever took advantage of its rights under that contract. The key to this issue is not the right to conduct the operation, but rather, the actual conduct of the operation.
"A reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the [board]. . . . Furthermore, on factual issues material to the reasons for the [board's] decision, the credibility of witnesses is within the province of the [board]." (Citation omitted.) Whisper WindDevelopment Corporation v. Planning Zoning Commission,32 Conn. App. 515, 523, 630 A.2d 108 (1993), aff'd., 229 Conn. 176,640 A.2d 100 (1994). Clearly, the Board made a determination CT Page 2814 regarding the sufficiency of the evidence on this issue.
The Board's reason for upholding the Cease and Desist Order is supported by substantial evidence in the record. Therefore, this court will not disturb the Board's determination in this regard.
2. Estoppel
Next, the plaintiffs claim that the defendants are estopped from issuing the Cease and Desist Order because of the express permission and authorization for the subject operation previously given to Mr. Hallahan by former ZEO Bruckner.
"Issues such as . . . estoppel are properly brought to the court for resolution, even though the subject matter was presented originally to a zoning board for review. . . . While such claims are more likely to arise in an injunction action [brought] to enforce municipal regulations . . . these are also proper issues to raise in an appeal from a decision of a zoning board of appeals upholding a decision of the zoning enforcement officer." (Citations omitted; internal quotation marks omitted.)Mercieri v. Zoning Board of Appeals, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 444620 (March 11, 1996, Rubinow, J.) The estoppel issue was presented to the Board, but the Board determined that only a court could consider this issue. (ROR, Item 6.)
The burden of proving the elements of a claim for estoppel is on the plaintiffs. Bloom v. Zoning Board of Appeals,233 Conn. 198, 206, 658 A.2d 559 (1995).
"Equitable estoppel has been applied to municipalities in the enforcement of zoning laws to prevent the enforcement of zoning regulations under certain circumstances. Generally, estoppel requires that the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . Although estoppel may not generally be invoked against a public agency in the exercise of its governmental functions . . . an exception is made where the party claiming estoppel would be subjected to a substantialloss if the municipality were permitted to negate the acts of its agents. . . . [Accordingly, we stated that estoppel] against CT Page 2815 municipalities is . . . limited and may be invoked against the enforcement of zoning regulations (1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Bloom v.Zoning Board of Appeals, supra, 233 Conn. 203-04 n. 6.
The concept of substantial loss encompasses great economic loss that results from "expensive and permanent improvements which it would be highly inequitable and unjust to destroy." (Internal quotation works omitted.) Dornfried v. OctoberTwenty-Four, Inc., 230 Conn. 622, 640, 646 A.2d 772 (1994). "The trial court's determination that the [plaintiffs] would suffer a substantial loss unless the [defendants were] estopped from enforcing the town zoning regulation is a finding of fact. . . . that will not be overturned unless it is clearly erroneous in light of the evidence in the whole record." Id., 636.
"Cases where the estoppel [claim have] succeeded are ones in which town officials acted to issue approvals when they were fully aware of the intended [use] to which a property or structure was to be put." Osterberg v. Seymour Zoning Board ofAppeals, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 31218 (November 15, 1990,3 Conn. L. Rptr. 538, Fuller, J.)
This court, following established guidelines, "has reviewed the record and considered the arguments of counsel with great caution." (Internal quotation marks omitted.) Mercieri v. ZoningBoard of Appeals, supra. The record establishes that the plaintiffs have met their burden of proving all elements of the test for municipal estoppel. The court finds that the plaintiffs were induced by the letters of ZEO Bruckner and ZEO Taylor (ROR, Items 17 — 20) to believe that the subject property was a legal, pre-existing, non-conforming use, which was not in violation of any zoning regulations. Further, the court finds that, even though the subject operation did not predate the zoning regulations, due to Mr. Hallahan's long-term involvement with the subject property, Mr. Hallahan "lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Internal quotation marks omitted.) O'Sullivan v.Bergenty, 214 Conn. 641, 650-51, 573 A.2d 729 (1990). Indeed, Mr. Hallahan had no reason to suspect that his use of the subject CT Page 2816 property was illegal. As indicated in the four letters of compliance and as is evident throughout the transcript, the subject use has existed without question for as long as anyone can remember. Nevertheless, as required by the state contracts, Mr. Hallahan did seek the advice of the ZEO regarding zoning compliance, and, on four occasions, the ZEO did provide detailed letters of compliance.
Two different Zoning Enforcement Officers did issue the four letters within the scope of their authority and in good faith. The letters indicate that the conclusions contained therein were the result of independent investigations into the usage of the subject property. The conclusions contained therein were erroneous. Nevertheless, this is just the type of honest error contemplated by the doctrine of estoppel. West Hartford v.Rechel, 190 Conn. 114, 122, 459 A.2d 1015 (1983).
There is substantial evidence in the record to support the court's conclusion that Mr. Hallahan changed his position in reliance on the subject letters by expending large sums of money to purchase equipment in anticipation of the work to be conducted pursuant to fulfill the contracts with the state. (ROR, Item 8, p. 20.) In doing so, Mr. Hallahan incurred injury and would be subjected to substantial loss if the Board was permitted to uphold the Cease and Desist Order. If this result was allowed, Mr. Hallahan would effectively be put out of business.
Under the special circumstances of this case, the court finds that it would be highly inequitable and oppressive to permit the Board to effectively revoke these four letters of zoning compliance, one of which was issued by ZEO Taylor only three months before he issued the Cease and Desist Order, by upholding the Cease and Desist Order.
Accordingly, because the plaintiffs have sustained their burden of proof on this issue, the court finds that they are entitled to the relief afforded by the doctrine of municipal estoppel. On this basis, the court finds in favor of the plaintiffs as to the first count of the plaintiffs First Amended Appeal (#109).
B. Count Two
In the second count of the plaintiffs' First Amended Complaint, the plaintiffs argue that the express authorizations CT Page 2817 of the ZEO; the fact that the subject operation has been conducted for in excess of 20 years, and the provisions of Subsection 3(b) of Public Act 97-296[4] require the reversal of the Board's decision to uphold the Cease and Desist Order.
"The current rule in this state is that the validity of a planning and zoning commission's action is to be determined by reference to the zoning laws and regulations in effect at the time that the challenged action was taken." Michel v. Planning Zoning Commission, 28 Conn. App. 314, 318, 612 A.2d 778 (1992), cert. denied, 223 Conn. 923, 614 A.2d 824 (1992).
The subject Cease and Desist Order was issued on August 15, 1996. The present appeal was filed on December 5, 1996. Clearly, subsection 3(b) of Public Act 97-296 became effective on July 8, 1997. Subsection 3(b) of Public Act 97-296 was not in effect at the time the challenged action was taken in the present case Accordingly, the second count of the plaintiffs' appeal is dismissed.
 VII. Conclusion
In conclusion, as to Count One, this court finds that the Board is estopped from upholding the issuance of the Cease and Desist Order for the reasons hereinbefore stated. Accordingly, the plaintiffs' appeal is sustained as to Count One. The matter is remanded to the Board with direction to revoke the Cease and Desist Order. The plaintiffs' appeal is dismissed as to Count Two.
It is so ordered
BY THE COURT: HIGGINS, J.