[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I
The plaintiff, Robert Bartolomeo, d/b/a Gotham Café , appeals from the decision of the defendant, the Zoning Board of Appeals of the City of New Haven (herein "the Board"), denying the plaintiff's appeal of a cease and desist order issued by the Executive Director of the Livable City Initiative of New Haven (herein "EDLCI").
The plaintiff is the lessee of property designated as 128 Crown Street in the city of New Haven and operates a business known as Gotham Café at that address. Gotham Café is in a BD-1 Zone (Central Business and Residential). On March 7, 2001, the EDLCI issued a cease and desist order, which is the subject of this appeal. On March 16, 2001, the plaintiff filed an appeal of the order to the defendant Board. A public hearing regarding the appeal took place on April 10, 2001. Subsequently, on the same date, the Board deliberated in closed session and voted to deny the appeal, thereby sustaining the order to cease and desist. The plaintiff appeals the decision of the Board to this Court.
 II
Pursuant to 19 Special laws 1007, Section 6 (1925) and Article XXXI, Section 185 of the Charter of the City of New Haven, the defendant Board is empowered to hear and decide appeals where it is alleged that any person is aggrieved by any order, requirement or decision made by an official charged with enforcement of zoning regulations. When the Board examines the reasonableness of a decision of the EDCLI, the Board acts administratively, in a quasi-judicial fashion, in applying an ordinance.Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 513-14. There is a strong presumption of regularity in the proceedings of a public body such as the Board. Murach v. Planning and Zoning Commission, 196 Conn. 192, CT Page 2036 205 (citations omitted). The burden of proof is upon the plaintiff to demonstrate that the Board acted improperly. Adolpson v. Zoning Board ofAppeals, 205 Conn. 703, 707 (citations, quotation marks omitted). The Court's review of the Board's decision is limited to whether that decision was arbitrary, illegal or in abuse of discretion. Whittaker v.Zoning Board of Appeals, 179 Conn. 650, 654 (citations omitted). The Board "is vested with a large measure of discretion." Mario v.Fairfield, 217 Conn. 164, 169. The issue before this Court is whether the trial record reasonably supports the conclusion of the Board. Burnham v.Planning Zoning Commission, 189 Conn. 261, 265 (citation omitted).
 . . . courts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers.
Burnham, supra, at 266.
 III
The record of the Zoning Board of Appeals for the City of New Haven reveals the following facts. Robert Bartolomeo operates a business known as "Gotham Citi Café " at 130 Crown Street, New Haven, Connecticut. This establishment was in existence for a period of time prior to 1999 when Bartolemeo received a certificate of occupancy for a separate establishment known as "Gotham Café " located at 128 Crown Street, New Haven. Gotham Café physically adjoins Gotham Citi Café and they share a fire door that is not used as access by patrons of Gotham Café . To gain access to Gotham Café , patrons must use a separate entrance on the street. Gotham Café opens for business upon the closing of Gotham City Café on three days of the week, Wednesdays, Fridays and Saturdays. Gotham Café closes at 5:00 a.m. The "Gothams" utilize the same staff members and police officers are retained for security, one on Wednesdays and two on Fridays and Saturdays. A cover charge is not required for entry to Gotham Café on Wednesdays and Fridays. However, a charge is required on Saturdays unless, according to the plaintiff, "it's used as a — as a giveaway, so to speak." (Exhibit V, page 29.)
Gotham Café is located in a BD-1 zone (central business/residential). To operate a dance hall in a BD-1 zone, it is necessary to receive a special exception under 63.D of the city ordinance. In the application for a building permit, Gotham Café presented a diagram showing seating, tables, a pool table and a service area for drinks. "It did not show space formally for dancing" according to Phillip Boldoc. (Exhibit V, page 39.) Several discussions over a span CT Page 2037 of two weeks took place between Bolduc, Bartolomeo and Francisco Gargiulo, Zoning Administrator. According to Bolduc, "[b]asically, the understanding that we were dealing with was a place to, you know, chill out after going to the night club, something lower key that offered non-alcoholic beverages. And that was the emphasis. We always recognized that . . . background music is often part of any establishment. And we wanted to try to establish that it was not going to be a dance club for after hours." (Exhibit V, page 37.)
Bolduc and Gargiulo expressed their understanding to Bartolomeo that the operation of the Café was to be in the nature of a "Dunkin' Donuts."[1] (Exhibit V, page 37.) Bartolomeo did not agree or disagree with that description. (Exhibit V, page 33.) According to Gargiulo, "I think we would have been better on the C of O if we had put `no dance hall' because discussion the three of us had, Phil, Mr. Bartolomeo and myself, was that there be no dancing there. You don't go to Dunkin Donuts at 4:00 in the morning and find a roomful of people dancing." (Exhibit V, page 41.) Gargiulo continued, "[t]his all started out as a sobering-out area. What do we do when we close the place at 1:00? . . . We want a place to put them where they can sober out." (Exhibit V, page 42.)
A building permit was issued August 26, 1999. It notes, in part, that the Café was "to be used for additional seating for non-alcoholic lounge area total occupied load would be up to 143 people." Additionally, the permit states, "[t]his area not to be used for adult sexually oriented performances." (Exhibit P.)
The Certificate of Use and Occupancy dated October 27, 1999, allows Gotham Café to operate as an A-2 night club. It states, in part, "[t]he only purpose of this Certificate is to approve the use of this building as stated in Building Permit #B99-742, issued August 26, 1999." The Certificate further states, "[p]er zoning ordinance, no live entertainment or disc jockeys allowed there." (Exhibit E.)
Recorded in the Land Records of the City of New Haven, Vol. 5576 at page 295 is the following statement signed by Robert Bartolemeo:
 Gotham Café will operate nightly from 8 p.m. to 4 a.m. (approximately) four days per week (Weds., Thurs., Fri., Sat.). It will be staffed by two doormen, two servers, and a sound technician to maintain background cd music. It will serve soda, juice, water and coffee from a counter service area. It will also have a police officer to maintain customer's safety on the sidewalk during the late hours. It will hold approximately 143 persons per building and fire regulations.
CT Page 2038
(Exhibit F.)
City Inspector Raphael Ramos conducted an inspection of Gotham Café on Saturday, February 24, 2001, at approximately 1:45 a.m. He observed a clear, glass enclosed booth with a disc jockey inside. The disc jockey was playing records from two turntables. A microphone was in front of the disc jockey although Ramos reports that he heard no interaction with patrons. In addition, Ramos observed approximately 120 patrons dancing in a cleared area of the floor. Ramos further noted that no cover charge was levied for entry. (Exhibit V, page 42 et seq.)
 IV
The definition of dance hall, as adopted by the Board, is "a public establishment that, for an admission fee, provides its patrons with music and space for dancing and, sometimes, dancing partners and refreshments." (Exhibit Q.) Under 42.L of the Ordinance, an establishment located in a BD-1 zone is required to make application for special exception under 63.D in order to operate a dance hall. The plaintiff claims that Gotham Café does not qualify as a dance hall and points to Inspector Ramos' testimony that there was no entry fee during the morning of February 24th as the basis for his argument.
Although no admission fee was charged on February 24, 2001, the plaintiff readily admitted that he charged such a fee on Saturdays, the exception being for special promotional nights. (Exhibit V, pages 28 and 29.) Inspector Ramos testified to the presence of a large area of floor space, clear of furniture, upon which 120 people were dancing to music provided by a disc jockey working in an enclosed booth from two record turntables. The evidence presented to the Board was not that of a lone couple that spontaneously decides to dance between tables accompanied by background music.
Based upon substantial and convincing evidence, this Court finds that the Board was justified in finding that Gotham Café is operating as a dance hall, charging a fee to enter and possessing a permanent dance floor and a sophisticated means of playing dance music.
 V
The petitioner further avers that the City was on notice of Gotham Café 's intention to allow dancing and issued a certificate of occupancy on that basis. CT Page 2039
 . . . in special circumstances, a municipality may be estopped from enforcing its zoning regulations . . . Estoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. West Hartford v. Rechel, 190 Conn. 114, 121 (1983) (citations omitted).
The plaintiff claims to have told both Bolduc and Gargiulo of his intentions for Gotham Café .
 We had a discussion as to what I was going to do. The main concern was am I going to have any type of entertainment, such as nude dancers, so forth and so forth. And I said no, absolutely not. Gotham Café is a place for people to drink water, to drink coffee. I'm going to play music. They're going to listen. They're going to hang around. Some may dance, whatever. But it was not to be an entertainment complex, which it is not.
[Exhibit V, page 13.)
The plaintiff cites the land record (Exhibit F, page 295) which notes the presence of "a sound technician to maintain background cd music." Finally, the plaintiff claims that Gotham Café , acting in reliance of the certificate of occupancy, has conducted itself in the manner described since 1999.
In zoning matters, estoppel is available "(1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations." West Hartford v. Rechel, supra, at p. 121 (citations omitted).
There is no merit to the petitioner's argument in the record presented to the Board. The building permit issued to Gotham Café makes no reference to "dancing" or "dance hall." The certificate of occupancy makes no reference to "dancing" or "dance hall," but does preclude "live entertainment" and "disc jockeys." Likewise, an examination of the land record (Exhibit F) omits any mention of dancing. Rather, these documents are consistent with Bolduc's and Garguilo's testimony as to their understanding of how Gotham Café was to operate. Finally, Gotham Café never applied for a 63.D special exception prior to April 10, 2001. Aside from the plaintiff's testimony, nothing in the record CT Page 2040 presented to the Board suggests that agents for the City of New Haven gave its consent (expressly or inferred) to induce Gotham Café to operate in violation of the ordinance or that the City had prior knowledge of such an operation.
 VI
This Court finds that the conclusion of the Board to sustain the EDLCI's order is reasonably supported by the trial record and further that the plaintiff has failed to establish, by a fair preponderance of the evidence, that the Board acted illegally, arbitrarily or in abuse of its discretion.
Accordingly, this appeal is dismissed and judgment may enter in favor of the defendant, the Zoning Board of Appeals of the City of New Haven.
Hudock, J.