[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this administrative appeal, the plaintiff, Gail Polatnick, challenges a decision of the defendant,[1] the Westbrook Zoning Board of Appeals (board). In 1997, the board overruled a decision of the town's zoning enforcement officer (ZEO), who issued the plaintiff a certificate of occupancy for her newly built home.
The resolution of this appeal requires that the court interpret § 12.00.03[2] of the Town of Westbrook Zoning Regulations (regulations), which, in turn, must be read in conjunction with General Statutes § 8-3 (f), to determine if a zoning permit operates as a "certification of compliance" for purposes of § 8-3 (f) and, if so, whether the plaintiff's reliance on the zoning permit prevents the town from requiring CT Page 13665 that the plaintiff bring the property into compliance with existing zoning regulations.
For the reasons stated below, the court sustains the plaintiff's ZBA appeal and further finds in favor of the plaintiff on the issue of municipal estoppel.
 Factual and Procedural Background
The court finds the following facts, based on the record and evidence presented in this appeal:
In 1990, Stephen and Peter D'Ambrosio, the owners of 181 Old Kelsey Point Road, divided their lot, creating a parcel known as 165 Old Kelsey Point Road. In July of 1993, Mrs. Polatnick entered into a contract with the D'Ambrosios to purchase the property, subject to obtaining the appropriate zoning and building permits. Jack Polatnick, an experienced building contractor and the plaintiff's husband, served as agent for both the sellers and his wife. On March 1, 1994, pursuant § 12.00.01 of the regulations, Polatnick submitted a Zoning Compliance 
Health Permit Application (zoning application) to construct a house on the 165 Old Kelsey Point Road lot. The zoning application included a site plan which indicated the location for the proposed house and septic system. At the time, Elaine Bruckner served as the town's ZEO; her approval of the application on March 1, 1994 indicated that the proposed use and location of the structure and septic system conformed to the relevant regulations. In addition to Bruckner, both the town sanitarian and John Arnold of the Inlands Wetlands and Water Courses Commission (IWWC) approved the application; in his approval Arnold stated: "This is a borderline project and should be supervised closely at time of execution work." An approved application serves as a zoning permit.
After obtaining the zoning permit, in June of 1994, Gail Polatnick purchased the 165 Old Kelsey Point Road lot. On April 25, 1995, Jack Polatnick obtained the requisite building permit and, a month later, secured reapproval of the original zoning permit. By early 1996, Polatnick had completed construction of 2 bedroom, 4-bath, 1,900 square foot house on the site.
Pursuant to the regulations, the plaintiff then applied for a certificate of occupancy. The current ZEO, James Taylor, requested an "as built" plan, which Mr. Polatnick provided, for CT Page 13666 comparison with the site plan that was originally included in the zoning permit application. The IWWC enforcement officer "signed-off" on the certificate of occupancy and Taylor, after consultation with his attorney, Duncan Forsyth, issued a certificate of occupancy to Mrs. Polatnick on May 21, 1997.
On June 27, 1997, neighbors, who are also named as defendants, pursuant to General Statutes § 8-7, appealed the ZEO's decision to issue the certificate of occupancy. The board conducted public hearings on September 17, October 8 and October 22, 1997. Subsequently, on November 19, 1997, the board voted, 5-0, to overrule ZEO Taylor's decision to issue the certificate of occupancy; concluding that the original zoning permit, issued by ZEO Bruckner, should never have been approved since, based on the board's interpretation of the relevant regulations, as proposed, the application indicated that the site plan did not meet the minimum area and frontage requirements; the lot was an illegal rear lot and not an approved building lot; the proposed location of the structure violated the yard requirements and; the issuance of the certificate of occupancy by ZEO Taylor was itself a violation of the regulations and General Statutes § 8-3 (f). The board published notice of its decision on November 29, 1997.
Gail Polatnick filed an appeal, pursuant General Statutes §8-8, on December 10, 1997 and an amended appeal on January 28, 1998. Each of the parties submitted trial briefs; the court conducted an administrative and evidentiary hearing on April 29, 1999, after which, the parties submitted supplemental memoranda of law.[3]
 Jurisdiction
Section 8-8 of the General Statutes governs zoning appeals and mandates that the parties strictly comply with the relevant statutory provisions. Simko v. Zoning Board of Appeals,206 Conn. 374, 377, 538 A.2d 202 (1988).
I. Aggrievement
Pursuant to General Statutes § 8-8 (b), "any person aggrieved by any decision of a board may take an appeal to the superior court."
The plaintiff, Gail Polatnick, testified that she owns the property, 165 Old Kelsey Old Road, that is the subject of this CT Page 13667 appeal and that her interests have been specifically and adversely affected by the decision of the defendant board. The plaintiff has established aggrievement.
II. Timeliness and Service of Process
An administrative appeal must be "commenced by service of process within fifteen days from the date the notice of the decision was published." General Statutes § 8-8 (b).
The board published notice of its decision on November 29, 1997. The plaintiff filed her complaint on December 10, 1997 and served Tanya Lane, Clerk for the Town of Westbrook, John Hall, Chair of the Zoning Board of Appeals of the Town of Westbrook, and Attorney Michael Cronin, on behalf of the abutting property owners.
The plaintiff has timely served the proper parties. Accordingly, the court has jurisdiction to hear and decide this appeal.
 Standard of Review
Chapter 124, Zoning, of the General Statutes sets forth the functions and responsibilities of zoning commissions and boards. Section § 8-6 specifically addresses the authority of the board to review decisions made by the zoning enforcement officer, the pertinent part of § 8-6 (a)(1) states: "Powers and duties of board of appeals. (A) The zoning board of appeals shall have the following powers and duties: (1) to hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter[.]"
The board, when reviewing an appeal of the ZEO's decision, hears and decides the matter de novo. Caserta v. Zoning Board ofAppeals, 226 Conn. 80, 88-89, 626 A.2d 744 (1993)." [T]he same test as applied for judicial review of a special permit or variance would apply to appeals from the zoning board of appeals on its review of the action of the zoning enforcement officer." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 33.7, p. 577. The court in Bloom v. ZoningBoard of Appeals, 233 Conn. 198, 205-10, 658 A.2d 559 (1995), sets forth the well-established standard of review used by courts CT Page 13668 when ruling on an appeal from a board's decision. The board enjoys wide discretion and may only be overruled by a showing that the board acted unreasonably, arbitrarily or illegally.Irwin v. Planning Zoning Commission, 244 Conn. 619, 628,711 A.2d 675 (1998). "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra, 233 Conn. 198, 206.
 Discussion
The plaintiff contends that the board acted illegally, arbitrarily or abused its discretion when it overruled the ZEO's decision to issue the certificate of occupancy or, alternatively, that if the board acted properly, nevertheless, the doctrine of municipal estoppel prevents the board from enforcing the relevant regulations with respect to this property. Lastly, the plaintiff contends that if the board acted legally in prohibiting the issuance of a certificate of occupancy and, further, is not estopped then, in effect, this amounts to an unconstitutional taking of her property. The board contends that the regulations authorize its actions, that estoppel is not warranted under these circumstances and, finally, that enforcement of the town's regulations will not illegally deprive Mrs. Polatnick of her property.
I. Authority of the Board to Hear the Defendants' Appeal
The plaintiff alleges that the board used the ZEO's May 21, 1997 decision as a means to reverse the original zoning permit issued in 1994. The plaintiff maintains that this collateral attack on the March 1, 1994 zoning permit is an illegal exercise of the board's powers.
The board disputes this characterization, relying on General Statutes § 8-6 (1), for authority to hear the defendants' appeal of the ZEO's May 21, 1997 decision. The court agrees with the board that it has authority to hear and decide matters appealed pursuant to §§ 8-6 and 8-7.
General Statutes § 8-7 states, in relevant part: "Appeals to board. Hearings. Effective date of exceptions or variances; filing requirements. The concurring vote of four members of the zoning board of appeals shall be necessary to reverse any order, requirement or decision of the official charged with the CT Page 13669 enforcement of the zoning regulations . . . An appeal may be taken to the zoning board of appeals by any person aggrieved . . . and shall be taken within such time as is prescribed by a rule adopted by said board, or, if no such rule is adopted by the board, within thirty days, by filing with the zoning commission or the officer from whom the appeal has been taken and with said board a notice of appeal specifying the grounds thereof."
The ZEO's decision to issue a certificate of occupancy is subject to review by the board. General Statutes §§ 8-6 (1) and8-7. Accordingly, the court finds that, provided that an applicant follows the statutorily-prescribed appeal process, a board has authority to review a ZEO's decision to issue or deny a certificate of occupancy.
Nevertheless, the court notes that in pursuing the merits of this appeal the parties have lost sight of the forest for the trees. The plaintiff initially challenged the jurisdiction of the board on the ground that the defendants' appeal of ZEO Taylor's decision was, in fact, a collateral attack on the zoning permit issued in 1994 by ZEO Bruckner, and, therefore, untimely. The board received a number of memoranda of law on this point.[4]
General Statutes § 8-7 requires that all appeals be made to the board within 30 days of the ZEO's decision. If a party, who has actual or constructive notice of the ZEO's decision, as the defendants did in this case, fails to file an appeal within that time, the board has no authority to act. See Koepke v. ZBA,230 Conn. 452, 645 A.2d 983 (1994).
This appeal before the board, however, ostensibly concerns the propriety of the ZEO's 1997 decision, which, based on the record submitted, proves procedurally defective. Although the plaintiff did not challenge the timeliness of the defendants' appeal with respect to the more recent time frame, i.e., the issuance of the certificate of occupancy and the date the defendants filed their appeal of this decision with the board, the court notes that based on the record[5] the board did not have authority to hear and decide this matter.
ZEO Taylor issued the certificate of occupancy on May 21, 1997. According to the date stamped on the defendants' appeal application, the board did not receive the defendants' appeal until June 27, 1997. Absent any evidence to the contrary, the record indicates that the board had no authority to hear the CT Page 13670 defendants' appeal of ZEO Taylor's 1997 decision, since the defendants did not timely file their appeal with the board in accordance with General Statutes § 8-7.
The court, however, has not heard evidence or argument with respect to this point and, therefore, will proceed based on the pleadings and arguments of the parties. In addition, "while the courts do not decide academic questions, an exception occurs where a party can obtain some practical relief from a decision or where the case presents a situation likely to arise in future proceedings, and further litigation can be avoided by a decision. Helbig v. Zoning Commission, 185 Conn. 294, 300. See also Phaneuf v. Commissioner of Motor Vehicles, 166 Conn. 449, 452." PaupackDevelopment v. Conservation Commission, Superior Court, judicial district of Danbury, Docket No. 308448 (January 14, 1993) (Fuller, J.).
The parties have fully briefed and argued the issues. Accordingly, the court will discuss each in turn. The court does, however, note at the onset that given the relationship between compliance and estoppel, its interpretation of General Statutes §8-3 (f) overlaps with its discussion of the issue of equitable estoppel.
II. General Statutes 8-3 (f)
The crux of the plaintiff's appeal concerns the board's interpretation of General Statutes 8-3 (f). The plaintiff argues that when a structure "as built" conforms with the original zoning permit that compliance satisfies the requires of § 8-3
(f), and, absent a finding that the house deviates from the approved plans or building code, a certificate of occupancy must issue. The board interprets the statute differently and, in effect, contends that § 8-3 (f) authorizes a second ZEO review of the application to assure compliance with the zoning regulations, notwithstanding that a party obtained all the requisite approvals/permits and that the structure, as built, complies with those permits. If Connecticut were a jurisdiction that did not recognize the equitable principles of municipal estoppel, the board's interpretation, particularly given the ZEO's enforcement duties might have some, albeit harsh, logic. Connecticut does, however, recognize that a municipality may be estopped from enforcing its regulations when a party relies on the actions of a municipality's agent to her detriment and when enforcement of the regulations would cause a substantial loss. The legislature is CT Page 13671 presumed to enact laws in relation to existing legislation and common law rules governing the same subject matter. See Bittle v.Commissioner of Social Services, 249 Conn. 503, 507, ___ A.2d ___ (1999).
"The question of whether a particular statute or regulation applies to a given set of facts is a question of statutory interpretation. . . . Although the position of the municipal land use agency is entitled to some deference the interpretation of provisions in the ordinance is nevertheless a question of law for the court." (Internal quotation marks omitted.) Mercieri v.Zoning Board of Appeals, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 444620 (March 11, 1996) (Rubinow, J.).
General Statutes 8-3 (f) states: "No building permit or certificate of occupancy shall be issued for a building, use or structure subject to the zoning regulations of a municipality without certification in writing by the official charged with the enforcement of such regulations that such building, use or structure is in conformity with such regulations or is a valid nonconforming use under such regulations."
"The certificate of occupancy is not defined in the zoning statutes . . . It is, after all, not truly a zoning tool. Rather, it is a mechanism utilized by a building official to certify that the building or structure substantially conforms to the provisions of the state building code . . . Its statutory and primary use is to insure, for obvious safety reasons, that the structure is safe.
"General Statutes Sec. 8-3 (f) requires that a certificate of zoning conformity be issued before a building permit or certificate of occupancy be issued to determine that such building use or structure is in conformity with such regulations. . . . A certificate of occupancy is often issued by the zoning enforcement officer and sometimes it is used for both purposes. See generally, Anderson, American Law of Zoning, 3rd Ed., Secs. 19.02 and 19.03. Once issued by a zoning officer it becomes reviewable by the zoning board of appeals pursuant to General Statutes Sec. 8-6 (1) with statutory aggrievement allowed. This court can see the merit of allowing this type of appeal if there are some allegations and some proof that the building, use, or structure as completed is at variance, from a zoning standpoint, with the initial zoning permit. In other CT Page 13672 words, the appeal is taken to the board because the actual construction goes beyond the permit and violates bulk or set back requirements, or the use is not in conformance with the permitted use. Such allegations and proof would serve to separate the meritorious appeal from the spurious appeal. Without such a requirement, an abutter can sit back and take an appeal, as has been done in this case, after watching the building be constructed causing financial damage." (Internal quotation marks omitted.) Sakon v. Town of Plainville Zoning, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 437187 (July 2, 1992) (Berger, J.).
This court finds Judge Berger's analysis persuasive and similarly concludes that for purposes of § 8-3 (f) a zoning permit operates as "certification in writing by the official charged with the enforcement of such regulations that such building, use or structure is in conformity with such regulations." General Statutes § 8-3 (f).
This interpretation, one that is consistent with Connecticut case law[6] recognized treatises,[7] and the purpose and history of § 8-3 (f),[8] has the virtue of ensuring stability in land use planning and decision making and, in addition, protects the reliance interests of the property owner, neighbors and town officials. See Upjohn Co. v. ZBA, 224 Conn. 96, 102,616 A.2d 793 (1992) (citing Spectrum of Connecticut, Inc. v.Planning Zoning Commission, 13 Conn. App. 159, 163,535 A.2d 382, cert. denied, 207 Conn. 804, 540 A.2d 373 (1988) ("permitting collateral attack on special permit condition would make land use regulation system impractical and unworkable")
A valid permit serves as prima facia evidence that an approved application complies with the relevant land-use regulations. A zoning permit, like any other land-use permit, controls the applicant's legal right to develop the parcel. See, e.g., Baumer v. Zoning Commission of the Borough of Newtown,45 Conn. App. 653, 656, 697 A.2d 704 (1997) (citing Gagnon v.Planning Commission, 222 Conn. 294, 298, 608 A.2d 1181 [1992]).
Absent a finding that the plaintiff's house, as built, failed to comply with the zoning permit issued in 1994, which, despite extensive hearings, the board did not find, the board had no reasonable basis for overruling the ZEO's decision to issue the certificate of occupancy. CT Page 13673
Accordingly, the plaintiff's appeal is sustained on this ground and the board's decision is reversed.
III. Municipal Estoppel
Given the board's finding that the original application, governed by the 1994 zoning permit, violates the town's zoning regulations, the plaintiff also seeks a finding by the court regarding the issue of estoppel. The plaintiff contends that, under the doctrine of municipal estoppel, even if the original application violated the zoning regulations, the town, nevertheless, should be prevented from requiring that the plaintiff bring the property into compliance with those regulations. In essence, compliance with the zoning permit establishes constructive compliance with the relevant regulations.
In response, the defendants claim that the plaintiff has failed to establish that she exercised "due diligence" to ascertain whether her application complied with the relevant regulations and, therefore, cannot sustain her claim that the town should be prevented from requiring that the property conform with the appropriate regulations.
"Although estoppel may not generally be invoked against a public agency in the exercise of its governmental functions . . . an exception is made where the party claiming estoppel would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents. . . . and may be invoked against the enforcement of zoning regulations (1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations." (Citations omitted; emphasis in original; internal quotation marks omitted.)Bloom v. Zoning Board of Appeals, supra, 233 Conn. 203-04 n. 6.
"[I]n order for a court to invoke municipal estoppel, the aggrieved party must establish that: (1) an authorized agent of the municipality had done or said something calculated or intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its CT Page 13674 position in reliance on those facts; and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents." Bauer v. WasteManagement of Connecticut, 234 Conn. 221, 247 A.2d 1179 (1995).
As the record and testimony before the court make evident, there exists substantial evidence and the plaintiff has proved that she has met the first, third, and fourth prongs of this test. The court finds that the plaintiff complied with every request and requirement of the town's building inspector, sanitarian and ZEO. While opponents' questions contained much innuendo of alleged impropriety on the part of the plaintiff's husband and/or the first ZEO involved in the case, not one scintilla of evidence of impropriety was produced. Innocent, though mistaken inducement by town officials within their authority is a general intent occurrence not requiring the specific intent to mislead. West Hartford v. Rechel,190 Conn. 114, 122, 459 A.2d 1015 (1983). The plaintiff relied on the evidence of these town officials, substantially changed her position, hired an attorney and an engineer/surveyor, and spent close to $250,000. The plaintiff appeared before the IWWC, changed plans at the request of town officials and corrected construction mistakes not in conformance with the approved plans. The plaintiff even ceased construction to allow the neighbors safe, quiet enjoyment of the neighborhood through the end of summer.
And, so, the only question before the court concerns the second prong, i.e., the degree to which the plaintiff exercised due diligence in her efforts to ascertain whether or not her application for a zoning permit conformed to the zoning regulations.
The defendants assert that because the plaintiff's husband is an experienced building contractor he knew or should have known that the original plan violated the zoning regulations. Further, the defendants point to another of the plaintiff's agents, Robert Hart, the engineer who questions contained much innuendo of alleged impropriety on the part of the plaintiff's husband and/or the first ZEO involved in the case, not one scintilla of evidence of impropriety was produced. Innocent, though mistaken inducement by town officials within their authority is a general intent occurrence not requiring the specific intent to mislead. WestHartford v. Rechel, 190 Conn. 114, 122, 459 A.2d 1015 (1983). The plaintiff relied on the evidence of these town officials, CT Page 13675 substantially changed her position, hired an attorney and an engineer/surveyor, and spent close to $250,000. The plaintiff appeared before the IWWC, changed plans at the request of town officials and corrected construction mistakes not in conformance with the approved plans. The plaintiff even ceased construction to allow the neighbors safe, quiet enjoyment of the neighborhood through the end of summer.
And, so, the only question before the court concerns the second prong, i.e., the degree to which the plaintiff exercised due diligence in her efforts to ascertain whether or not her application for a zoning permit conformed to the zoning regulations.
The defendants assert that because the plaintiff's husband is an experienced building contractor he knew or should have known that the original plan violated the zoning regulations. Further, the defendants point to another of the plaintiff's agents, Robert Hart, the engineer who prepared the original application's site plan. Mr. Hart testified that based on his understanding of the regulations he did not believe that the plans complied with them but, nevertheless, he left the final determination with Mr. Polatnick to work out and "bounce" off the ZEO. While the court has no difficulty imputing the knowledge of either Mr. Polatnick or Mr. Hart to the plaintiff, their knowledge and or opinions do not end the court's inquiry.[9]
Mr. Polatnick also testified and the record supports the finding that he reviewed the plaintiff's application with ZEO Bruckner prior to its submission and that he had a professional survey of the lot prepared (although none was required under the regulations). Further, the record supports the finding that ZEO Bruckner had a reasonable basis to conclude that the application complied with the relevant zoning regulations (those in effect in 1990 at the time 165 Old Kelsey Point Road came into being) and, based on her interpretation of the zoning regulations and the application's conformity to those regulations, ZEO Bruckner issued the zoning permit, in good faith.
The court in Zoning Commission v. Lescynski, 188 Conn. 724,735, 453 A.2d 1144 (1982) stated the following: "It is noteworthy that the cases on which the defendants rely to establish their defense of estoppel are cases in which town officials acted to issue approvals when they were fully aware of the intended use to which a property or structure was to be put." CT Page 13676
Similarly, in this case, the plaintiff relied on the ZEO's interpretation of the regulations and only purchased the propertyafter obtaining the zoning permit. The ZEO, in issuing the permit was fully aware, as evidence by the application and site plan, of the proposed use of the property and the location of the house and septic system. As the myriad of zoning appeals attests, zoning regulations are not self-evident, and, even after careful study, reasonable minds may disagree as to whether a proposed use or plan conforms with the regulations. Consequently, it is both expected and necessary to consult with zoning officials in an effort to bring a proposal into compliance with the regulations. Individuals have a right to expect that if they submit, in good faith, an application that a town's ZEO subsequently approves, they may, barring timely revocation of approval, rely on the zoning permit as evidence that their property, when built in accordance with the zoning permit, complies with the zoning regulations.
Whether the ZEO, as the board clearly believes, was in error in issuing the original zoning permit proves of little of value at this stage of the proceedings. The board cannot, at this late date, attempt to undo the underlying action that began this process, particularly in light of the fact that the ZEO approved the plaintiff's application not once but twice. Moreover, the record reflects that town officials and abutting property owners were aware that the zoning permit had been issued and, further, that it had been reapproved more than a year later. Either in 1994 or again in 1995, the defendants could have, had they elected to do so, challenged ZEO Bruckner's interpretation of the regulations and the plaintiff's reliance on that approval.
In addition, the defendants have not introduced any evidence that suggests that the plaintiff's application to the ZEO misrepresented the intended use of the property or the location of the building and septic system. Nor have the defendants introduced any credible evidence that suggests that the ZEO's interpretation of the regulations and subsequent issuance of the zoning permit, although perhaps improvidently granted, were the product of anything other than honest errors. See West Hartfordv. Rechel, supra, 190 Conn. 114, 122.
Accordingly, the court, as previously discussed, finds that the 1994 zoning permit authorizing the plaintiff's activities controls the applicable regulations with respect to this property CT Page 13677 and, consequently, the scope of the town's enforcement powers. The plaintiff has sustained her burden of proving that the defendant board should be prevented, under the equitable principles of estoppel, from requiring that she bring the property into compliance with the existing zoning regulations.
IV. Confiscation
Because the conclusions of the court regarding General Statutes § 8-3 (f) and estoppel resolve this appeal in favor of the plaintiff, it will not address the plaintiff's "takings" argument. See Statewide Grievance Committee v. Alan Spirer,247 Conn. 762, 777, ___ A.2d ___ "(we ordinarily eschew unnecessary determinations of constitutional questions [internal quotation marks omitted])."
 Conclusion
Based on the foregoing analysis, the court sustains the plaintiff's appeal and reverses the decision of the board. Further, the court finds that doctrine of municipal estoppel limits the enforcement power of the zoning authorities specifically the board may not enforce the existing regulations regarding the status of the lot as a building and/or rear lot nor the relevant provisions concerning minimum area, yard and frontage requirements, to the extent that the property and structure conform to the original zoning permit issued in 1994.
It is so ordered.
By the Court
Edward J. MullarkeyJudge of the Superior Court