## COLLINS GROUP, INC., ET AL. *v.* ZONING BOARD OF APPEALS OF THE CITY OF NEW HAVEN ET AL. (AC 23487)

Schaller, Flynn and Peters, Js.

---

562

Argued June 3—officially released August 5, 2003

*David S. Hoopes*, for the appellants (plaintiffs).

*Philip R. Pastore III*, for the appellees (defendants).

*Marjorie Shansky*, for the appellee (intervening defendant Wilhelm Gertz).

*Opinion*

PETERS, J. Under General Statutes § 8-2 (a),[1] a local zoning commission has the authority to regulate certain characteristics of buildings including the "location and use of buildings . . . ." Pursuant to this authority, New Haven has enacted article V, § 42, of the New Haven Zoning Ordinance entitled "Use Regulations for Business and Industrial Districts," which permits a zoning enforcement officer to grant "as of right" status to uses that are analogous to those that are explicitly listed in the zoning ordinance. Once an analogous use determination has been made, it "shall thereafter have general applicability to all uses of the same type." New Haven Zoning Ordinance, art. V, § 42. In this case, the principal issue is whether the zoning board of appeals of the city of New Haven (board) properly upheld the determination of a zoning enforcement officer that there was "no analogous use" that would justify the use of a building as a rooming house for ninety male residents in a short-term residential drug treatment program. The trial court affirmed the decision of the board. We agree and affirm the judgment of the trial court.

The plaintiffs, Collins Group, Inc., and Community Solutions, Inc.,[2] appealed to the trial court from the decision of the board, alleging that their proposed use of a building located at 850 Grand Avenue in New Haven

[1] General Statutes § 8-2 (a) provides in relevant part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the . . . use of buildings, structures and land for trade, industry, residence or other purposes . . . ."

[2] The plaintiffs are affiliated corporations. Collins Group, Inc., is the owner of the premises in question. Community Solutions, Inc., is the proposed tenant.

had been denied improperly. Their principal claim was that previously approved analogous uses of other property in similar districts required approval of their proposed use of the property as a residential treatment center. They also advanced a claim of municipal estoppel, based primarily on two letters of zoning compliance for the property that previously had been issued by a deputy zoning enforcement officer.

In the trial court, the plaintiffs also challenged the validity of the limited use variance, for eighteen rather than ninety young men, that the board had granted to them. On November 2, 2000, Wilhelm Gertz, an abutting landowner, was granted status as an intervening defendant because of his interest in the use variance.

The trial court agreed with both defendants that the decision of the board should be upheld and rendered judgment accordingly. It properly based its judgment on the findings of fact by the board. See *Caserta* v. *Zoning Board of Appeals*, 226 Conn. 80, 87–91, 626 A.2d 744 (1993); *Northeast Parking, Inc.* v. *Planning & Zoning Commission*, 47 Conn. App. 284, 290–91, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998).

The underlying facts are undisputed. The plaintiffs' property at 850 Grand Avenue is located in a general business (BA) district. The plaintiffs submitted an application to the board to use the premises for a "rooming house that offers a comprehensive short-term residential treatment program of drug treatment for young male adults, referred by the judicial branch, having offices and an on-site staff of eight, up to ninety residents (also offering support services to include vocational training, job development and life skills)." Although the judicial branch had requested service providers to propose programs for forty clients, the plaintiffs had increased that

number to ninety[3] to cover the costs associated with building repairs and renovation.

On June 1, 2000, the zoning enforcement officer, Phillip R. Bolduc, determined that § 42 of the New Haven zoning ordinance previously had not been applied to permit a use analogous to that proposed by the plaintiffs' application.[4] As a result, he ruled that the plaintiffs were required to seek a variance.

On June 20, 2000, the plaintiffs simultaneously filed an appeal to the board from Bolduc's decision and filed an application with the board for a use variance. After a public hearing on July 18, 2000, addressing both issues, the board held a special meeting on August 10, 2000, at which it unanimously upheld Bolduc's determination.[5] The board found that there was no existing analogous use because the proposed use was much larger than any use previously authorized by the board. The board focused on the facts that the proposed use would involve ninety clients, plus staff, visitors, suppliers and deliveries, combined with a lack of exterior recreation space, and an age group ranging from sixteen to twenty-five years old. The board declined to attach significant weight to the plaintiffs' list of allegedly similar uses because the plaintiffs had not presented that information to Bolduc or the city planner prior to the hearing. Without such prior disclosures, the board declared itself unable to determine whether the alleg-

---

[3] There is some dispute between the parties over whether the final total number of residents was to be eighty or ninety.

[4] Although the plaintiffs characterized their proposed use of their property as a "rooming house," they did not rely directly on the fact that, under § 42E, a rooming house is a permitted use in a BA zone. They have consistently taken the position that their use was *analogous* to that of a rooming house.

[5] The board, by a vote of four to one, granted the plaintiffs a use variance limited to eighteen residents. Although, at trial, the plaintiffs also claimed that the limitation contained in the use variance was improper, they have not appealed from the trial court's adverse ruling on this claim. The validity of the use variance is not an issue in this appeal.

edly analogous uses were legal conforming uses, permitted uses in the zone, illegal uses or uses that had obtained some form of zoning relief.

The trial court upheld the decision of the board. It concluded that the plaintiffs had failed to establish that the board had acted illegally, arbitrarily or in abuse of its discretion. It also rejected the plaintiffs' contention that their proposed use of their property was permitted as of right because the board was estopped from coming to any other conclusion. Accordingly, the court rendered judgment in favor of the defendants.

On appeal, the plaintiffs challenge the validity of both of these determinations. They maintain that, properly construed and applied, § 42 made their proposed use of the Grand Avenue property a use permitted as of right. They also renew their claim of municipal estoppel. We are not persuaded.

I

ANALOGOUS USES

The plaintiffs' appeal from the court's decision on analogous uses stems from their contention that their proposed use of the Grand Avenue property is permitted as of right because of prior approvals of uses that they deem analogous. In the service of that contention, they have raised a number of issues pertaining to the court's interpretation and application of § 42 of the New Haven zoning ordinance.

Section 42 contains a "use table" describing permitted uses of property in each of New Haven's business or industrial districts. The table contains an extensive list of uses and a chart indicating whether each use is permitted as of right, permitted only by special exception or not permitted in each of the districts. The section further states in relevant part that: "In any case where a *use* is not specifically referred to by the following

table, its status under this section shall be determined . . . by reference to the most clearly analogous use or uses that are specifically referred to by the table. When the status of a use has been so determined . . . such determination shall thereafter have general applicability to all *uses* of the same type." (Emphasis in original.) New Haven Zoning Ordinance, art. V, § 42. Concededly, residential treatment centers are not "specifically referred to" in the use table.

The plaintiffs maintain that the trial court improperly (1) concluded that § 42 is a valid municipal ordinance; (2) interpreted § 42; and (3) upheld the board's finding of "no analogous use" as that term is used in § 42 and declined to give dispositive weight to a 1987 certificate of zoning compliance for another residential treatment center located on Legion Avenue. We disagree.

Each of the plaintiffs' claims of impropriety concerns an issue of law. Our review of the trial court's conclusions is therefore plenary. *Munroe* v. *Zoning Board of Appeals*, 75 Conn. App. 796, 803, 818 A.2d 72 (2003) (interpretation of regulation is question of law).

A

The plaintiffs' first challenge to the judgment of the trial court is their claim that the court improperly concluded that § 42 is a valid municipal ordinance. They focus on the part of § 42 that refers to permissible analogous uses as "uses of the same type." New Haven Zoning Ordinance, art. V, § 42. The plaintiffs claim that, without some limiting definition in the ordinance itself, § 42 is fundamentally flawed because (1) it permits the board to violate the uniformity requirement of General Statutes § 8-2 (a) by making each use of land a unique use and (2) it confers rule-making authority on the board in derogation of the authority of the board of aldermen.

In response, the board claims that we should not consider these claims on their merits because they were not properly preserved. We agree with the board.

The plaintiffs have not identified any part of the record in which these issues were raised or decided. Their pleadings do not include any claims of illegality. As best we can tell, the only occasion in which they presented these claims to the trial court was during oral argument before that court, in which they adverted only briefly to problems of uniformity and rule-making. The trial court's memorandum of decision did not address these claims. The plaintiffs did not file a motion asking the court to articulate its resolution of these claims. See Practice Book § 66-5. If we were to review the judgment of the trial court with respect to these claims, we would be doing so in a vacuum. See *Zahringer* v. *Zahringer*, 262 Conn. 360, 370, 815 A.2d 75 (2003); *Putnam Park Associates* v. *Fahnestock & Co.*, 73 Conn. App. 1, 7, 807 A.2d 991 (2002). We decline to do so.

The plaintiffs do not argue that they brought these issues to the attention of the trial court. They maintain, however, in their reply brief, that these issues are "integral" to their claim that the board and the court misinterpreted § 42. We turn to that claim now.

B

The plaintiffs claim that the board and the court misconstrued the language in § 42 that makes a proposed use of property permissible as of right once a property use of "the same type" has been found to be a permitted use. Article V, § 42, of the New Haven zoning ordinance provides in relevant part: "When the status of a use has been so determined . . . such determination shall thereafter have *general applicability to all uses of the same type.*" (Emphasis added.) "When interpreting an ordinance, we recognize that [a] local ordinance is a

municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances. . . . A court must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance. . . . The words [employed] are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms. . . . The language of the ordinance is construed so that no clause or provision is considered superfluous, void or insignificant." (Internal quotation marks omitted.) *Evans* v. *Plan & Zoning Commission*, 73 Conn. App. 647, 651–52, 808 A.2d 1151 (2002).

In the plaintiffs' view, whether a proposed use of property is of "the same type" depends on the overall characterization of the use without regard to operational facts such as the number of occupants, the personal characteristics of occupants or on-site programs for occupants. In their case, they claim to have established a use "of the same type" because they propose to use their property as a residential treatment center. In 1987, another New Haven property owner had obtained a certificate of compliance for property on Legion Avenue that was used as a residential treatment center. Bolduc, as the zoning enforcement officer, had found the treatment center to be a permitted use analogous to a rooming house, a permitted use in a BA zone.

The trial court interpreted § 42 more narrowly. As directed by the zoning ordinance itself,[6] the court

---

[6] Article I, § 1, of the New Haven zoning ordinance provides: "Words not defined in this ordinance shall be defined in the most current edition of Webster's New World Dictionary, College Edition."

referred to Webster's New World Dictionary, College Edition, to ascertain the meaning of "uses of the same type" in § 42. Using this reference, the court stated: "The dictionary defines 'type' . . . as 'the general form, structure, plan, style, etc., characterizing or distinguishing the members of a class or group . . .' and that dictionary defines 'same' as . . . '1. being the very one, identical. 2. alike in kind, quality, amount, or degree; corresponding . . . .' Thus, certain similarities between uses do not establish that said uses are 'of the same type.' " The court found that "in determining whether the proposed use is of the 'same type' as existing uses, the [board] is entitled to consider . . . the size of the proposed use and the characteristics of the clientele to be served, and to require a high degree of likeness 'in kind, quality, amount or degree' between a proposed use and those posited by the plaintiffs as existing uses of the same type in order to trigger the 'general applicability' provision of § 42."

We agree with the court's reasoned analysis of the words "same type" as a fair and rational interpretation of the natural and usual meaning of the words used in § 42. The plaintiffs' contention that the term "same type" refers generically to a residential treatment center, regardless of operational details, leads to irrational results. For example, according to the plaintiffs' logic, a residential treatment center serving 500 pretrial young adults would be permitted as a right in a BA zone. Under such a scenario, a zoning enforcement officer would lack the authority to examine the effect of such a proposal on community concerns such as safety and traffic. The plaintiffs' argument cannot, therefore, be sustained. "Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body." *Spero v. Zoning Board of Appeals*, 217 Conn. 435, 441, 586 A.2d 590 (1991).

## C

The plaintiffs' third claim is that the trial court improperly upheld the board's factual determination of "no analogous use." In deciding the merits of the plaintiffs' appeal, the board was acting in its administrative capacity. The validity of the board's decision depended, therefore, on whether its decision was supported by substantial evidence of record. See *DeBeradinis* v. *Zoning Commission*, 228 Conn. 187, 199–200, 635 A.2d 1220 (1994). The plaintiffs maintain that the trial court should have concluded that the record did not support the board's decision and that the board, instead, had acted illegally, arbitrarily or in abuse of its discretion.

Viewing the evidence of record in light of its interpretation of § 42, the court concluded that there was substantial evidence before the board to support the board's determination that the permitted existing use cited by the plaintiffs was not "of the same type" as the plaintiffs' proposed use. The court noted that the plaintiffs had not claimed that their proposed use fit within the literal definition of rooming house.[7] The court held that, as the board had found, there were substantial differences between the residential treatment facility for forty-eight beds in twenty-four rooms on Legion Avenue that had been approved in 1987 and the plaintiffs' proposed facility for up to ninety young male adults and eight staff members.

The trial court's memorandum of decision highlights the relevant facts. The court referred to the city planner's report, which stated that "[s]everal aspects of this proposal are unique. The use is potentially very large— its residential component is larger than any rooming house that the city plan department is aware of in the

---

[7] In their brief in this court, the plaintiffs state: "The zoning ordinance makes no express provision for residential treatment facilities."

city of New Haven." The record reflects that the board relied on the city planner's report in its decision, as much of the public hearing was dedicated to these issues.[8]

We agree with the trial court's conclusion that the board properly determined that the usage of the property on Legion Avenue was not property usage "of the same type" as the usage proposed by the plaintiffs. We already have held that it was proper for the board to consider operational details such as size, age range and lack of recreational space. The existence of these operational differences is substantial evidence in support of the board's decision denying the plaintiffs' claim of right.

One other operational difference is worth noting. In addition to concerns about the size of the facility, the record reflects concerns about security that, so far as we know, have no counterpart in the residential treatment center on Legion Avenue. These safety concerns emanated from the fact that the facility was nonsecure, so that the pretrial detainees who would be housed there could leave the premises freely. Exacerbating these concerns was the lack of recreational space at the residential treatment center, which would make it likely that the center's residents would leave the facility often. The board properly could consider the likelihood that the plaintiffs' proposed use of the Grand Avenue property would impose additional burdens "on a neighborhood which has almost reached its saturation point for similar uses . . . ."

---

[8] The plaintiffs also argue that, just as restaurants continue to be restaurants regardless of their size, so residential treatment centers are residential treatment centers regardless of their size. This argument founders on the fact that the use table contained in § 42 does not treat all restaurants alike. Rather, the determination of whether a restaurant may be located in a BA zone as of right depends on whether the restaurant has an entertainment accessory or is located near a residential use. New Haven Zoning Ordinance, art. V, § 42E.

The court's judgment in favor of the board on the issue of analogous uses was based on its analysis of the comparability between the usage of the property on Legion Avenue and that proposed by the plaintiffs on Grand Avenue. The court was not asked to, and did not, conduct a de novo hearing with respect to the classification of other properties that the plaintiffs, in this appeal, claim to be analogous.

Although a list of these other possibly analogous properties, located on Grand Avenue, Broadway, Park Street and Howe Street, had been presented to the board, the board declined, for procedural reasons, to consider whether these properties were in fact analogous. It found that "the list of claimed 'similar uses' submitted by the applicant carried little weight, as the list was not presented to the zoning director (Bolduc) or city [planners] prior to the hearing, and the board was unable to determine whether the uses were legal nonconforming uses, permitted uses in the zone, illegal uses, or uses that obtained some form of zoning relief."

The plaintiffs have not addressed their procedural default before the board. They have not challenged the accuracy of the board's statement and, as far as the record shows, did not amend their submissions to the board to cure their omission. At oral argument before the trial court, they merely characterized the record as "incomplete." Over the objections of the board, the trial court nonetheless permitted them to brief what they believed to be "pertinent and analogous use of other decisions of the city pertinent to this claim."

The trial court's memorandum of decision, however, did not discuss any of the allegedly analogous properties to which the board had declined to give plenary consideration. If that was an oversight by the court, the plaintiffs did nothing to supplement the record, because they filed no motion for articulation.

In effect, the plaintiffs ask us to decide that the universe of possibly analogous properties includes properties to which the board, for reasons that the plaintiffs do not challenge, gave "little weight." The fact that they presented evidence to the board to the effect that they believed these properties to have analogous uses is no substitute for a finding by the designated trier of fact to that effect. They similarly ask us to overlook the absence of any determination by the trial court that these properties were examples of uses analogous to the use they proposed for 850 Grand Avenue.

The plaintiffs have failed to preserve this claim for appellate review. In the absence of any claim that the action of the board or the decision of the court fall into the category of plain error, we have confined our review of the judgment of the trial court to the allegedly analogous use of the Legion Avenue property.

On the record that is properly before us, we affirm the conclusion of the trial court that the plaintiffs have not established that their proposed use of the Grand Avenue property is a use of right under § 42. We agree with the trial court's interpretation of that section and with its determination that the plaintiffs have not established that the proposed use of their property falls within the section's savings clause that generalizes the approval of a prior "use of the same type." With respect to the one property that was fully considered as possibly analogous by the board and the court, we are persuaded that the operational realities of the plaintiffs' proposed use overshadow the nominal resemblance between residential treatment centers.

## II

## ESTOPPEL

The plaintiffs' second major claim is that they are entitled to use their property at 850 Grand Avenue as

a short-term residential treatment center for a drug treatment program for young male adults because the city of New Haven is estopped from challenging their right to do so. They maintain that the actions of several city officials unjustifiably induced them to make substantial expenditures with respect to their property that they otherwise would not have undertaken.

The trial court rejected their claim of municipal estoppel. The plaintiffs contend that we should reverse the judgment of the court because the court improperly (1) found that they have failed, as a matter of fact, to prove their claim and (2) declined to exercise its discretion to afford them an evidentiary ruling. We disagree.

A

We review the plaintiffs' challenge to the trial court's fact-finding to determine whether the court's decision was clearly erroneous. See *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Putnam Park Associates* v. *Fahnestock & Co.*, supra, 73 Conn. App. 11–12. We conclude that it was not.

It is useful, at the outset, to review the ground rules that govern claims of municipal estoppel. Our Supreme Court has recognized that "estoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . In municipal zoning cases, however, estoppel may be invoked (1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations." (Citations omitted; internal quotation marks omitted.) *Bauer* v. *Waste*

*Management of Connecticut, Inc.*, 234 Conn. 221, 246–47, 662 A.2d 1179 (1995). A claim of municipal estoppel is, therefore, inherently fact bound.

The plaintiffs base their claim of municipal estoppel on (1) a certificate of zoning compliance, dated February 5, 1999, in which deputy zoning enforcement officer Francesco Gargiulo approved their program application for forty adolescents, (2) a certificate of zoning compliance, dated September 28, 1999, in which Gargiulo approved a pretrial program for forty young men awaiting trial and (3) other claims of words or action by other city officials including the building inspector and fire marshal. As a result of these assurances, the plaintiffs allegedly spent $836,105, $567,972 of which was spent prior to Bolduc's decision on June 1, 2000.

On appeal, the plaintiffs have challenged only the trial court's finding as to the September 28, 1999 certificate of zoning compliance. In that certificate, the plaintiffs described their use as: "A tenant proposes to be the sole tenant and operate a program for young adults with pre-trial status in the care of the Court Support Services Division of the Connecticut Judicial Branch. This program would operate a licensed rooming house for *40 individuals.* There will be offices and a staff level not to exceed 10 people." (Emphasis added.) The plaintiffs closed on the Grand Avenue property on December 1, 1999.

The trial court determined that this certificate was not a sufficient basis for the plaintiffs' claim of municipal estoppel. The court relied on the fact that "[t]he plaintiffs did not receive a certificate of zoning compliance for the use at issue [ninety young men awaiting trial] prior to expending sums on the purchases and renovation of 850 Grand Avenue and were not unjustifiably induced to make such expenditures . . . ." We reiterate that the plaintiffs' decision to undertake the

larger program was not directed by the judicial branch, which had issued a request for proposals for forty individuals, but by the plaintiffs' financial need to support the debt service of the building.

The crux of the plaintiffs' disagreement with the trial court is their contention that there is no functional distinction between a program for forty young men and ninety young men. They maintain that their estoppel claim was limited to a forty bed program but that the number of residents "is irrelevant to the issue of whether the use itself is permitted as of right . . . ." In their view, they had no obligation to specify which of their building improvements were necessary for a forty bed program because their purchase of the building for $386,000 was a sufficient act of reliance on the certificate of zoning compliance.

This argument with respect to municipal estoppel thus mirrors the plaintiffs' argument with respect to analogous uses, which we have already found unpersuasive. If, as we have held, operational details such as size are relevant in that context, they are equally persuasive in this one. The use that the plaintiffs described in their September, 1999 application to Gargiulo was less than half the size of the use presented to Bolduc on June 1, 2000. "The town agents cannot be said to have ratified a use of which they were ignorant . . . especially since it is the [landowner's] burden to show that in undertaking the expansion [it] had exercised due diligence in ascertaining its legality." (Citation omitted.) *Zoning Commission* v. *Lescynski*, 188 Conn. 724, 732–33, 453 A.2d 1144 (1982).

By way of rebuttal, the plaintiffs cite *West Hartford* v. *Rechel*, 190 Conn. 114, 459 A.2d 1015 (1983). In that case, the Supreme Court held that a municipality could be estopped from enforcing its zoning regulations because of a long-standing pattern of unchallenged con-

duct. Id., 121–22. The defendants had been denied a license to operate a rooming house on their properties because the building inspector determined that such a use violated the zoning regulations. Id., 116–17. The Supreme Court reversed the denial of the license because the defendants justifiably might have relied on licenses for their property that had been freely granted to prior owners of the property. Id., 123–24. The defendants had inquired about those licenses before they purchased the property, and the building inspector had been fully aware of the uses to which the defendants intended to put the property. Id., 123.

This case is not governed by *Rechel.* The record in this case establishes that zoning officials had not granted "as of right" status either to predecessor owners of the plaintiffs' property or to any other large residential treatment center in New Haven. The plaintiffs have not alleged that, prior to June 1, 2000, either Gargiulo or Bolduc was aware, or should have been aware, of the plaintiffs' expanded program for use of their property.

The plaintiffs, therefore, undertook to make substantial improvements to their property to support a program that, as the trial court found, differed substantially from that for which they had obtained a valid certificate of zoning compliance. In consequence, we conclude, as did the trial court, that they made these expenditures at their own peril. When the plaintiffs finally revealed their true intentions, the zoning ordinance was applied fairly and consistently. The trial court's determination that the plaintiffs had failed to prove facts to establish a claim of municipal estoppel was, therefore, not clearly erroneous and must stand.

B

The plaintiffs' final claim is that the trial court improperly denied them a de novo evidentiary hearing with respect to their municipal estoppel claim. They had

raised the estoppel claim before the board by introducing documentary and testimonial evidence at the public hearing held on July 18, 2000. Nonetheless, General Statutes § 8-8 (k)[9] permits a court, in an appeal from the decision of a zoning board of appeals, to "allow any party to introduce evidence in addition to the contents of the record if . . . (2) it appears to the court that additional testimony is necessary for the equitable disposition of the appeal."

The statute does not say that a trial court is required to hold an evidentiary hearing. Our Supreme Court, in *Troiano* v. *Zoning Commission*, 155 Conn. 265, 268, 231 A.2d 536 (1967), held that the trial court had the authority to decide, in the exercise of its discretion, whether additional evidence was necessary for the equitable disposition of the appeal. On appeal, we need only decide whether, in this case, the trial court abused its discretion in declining to hear additional testimony with respect to the plaintiffs' estoppel claim. See *Samperi* v. *Planning & Zoning Commission*, 40 Conn. App. 840, 851, 674 A.2d 432 (1996).

The plaintiffs argue, however, that the trial court was required to hold an evidentiary hearing under the circumstances of this case because they have a due process right to present further evidence in support of their estoppel claim. For this proposition, the plaintiffs cite *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198,

[9] General Statutes § 8-8 (k) provides: "The court shall review the proceedings of the board and shall allow any party to introduce evidence in addition to the contents of the record if (1) the record does not contain a complete transcript of the entire proceedings before the board, including all evidence presented to it, pursuant to section 8-7a, or (2) it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. The court may take the evidence or may appoint a referee or committee to take such evidence as it directs and report the same to the court, with any findings of facts and conclusions of law. Any report of a referee, committee or mediator under subsection (f) of section 8-8a shall constitute a part of the proceedings on which the determination of the court shall be made."

203–205, 658 A.2d 559 (1995). In our view, the plaintiffs' reliance on *Bloom* is misplaced.

In *Bloom*, the Supreme Court ruled that the trial court, in considering a zoning variance, improperly raised and decided the case sua sponte on the theory of equitable estoppel, even though that issue had not been argued, either before the board or before the court. Id., 205. The Supreme Court held that the trial court should not have proceeded sua sponte. "Because the court held no evidentiary hearing on [the] subject, the plaintiffs never had an opportunity to present evidence to the trial court nor were they permitted the opportunity to present an argument on the legal applicability of the doctrine of equitable estoppel . . . . A fundamental premise of due process is that a court cannot adjudicate any matter unless the parties have been given a reasonable opportunity to be heard on the issues involved . . . ." Id.

The record in this case is far different. The plaintiffs had numerous opportunities to present evidence on their claim of municipal estoppel, both before the board and before the trial court.

The plaintiffs complain that their presentation of evidence before the board was truncated by the ruling of the chairman of the board, at the public hearing held on July 18, 2000, that no further evidence would be heard at that time because of the lateness of the hour. The chairman also stated, however, that the plaintiffs could have another opportunity to present evidence "if you want one." "I think we've heard a great deal," he further stated, "and if you have more, we'll let you at the end come back." The plaintiffs did not object. They evidently did not follow up on the chairman's offer.[10]

---

[10] In light of the statement of the chairman, which the plaintiffs recite in their brief, it is astonishing to read, in a transcript that they attached to their reply brief, that they claim to have had no more than one hour to present their case to the board. They emphasize that, on the evening of the hearing, the chairman stated: "I will give you a couple of minutes" to finish

They have, therefore, no basis for their claim that they did not have the opportunity to make their estoppel case to the board.

The plaintiffs also cite *Bianco* v. *Darien*, 157 Conn. 548, 554–55, 254 A.2d 898 (1969), in which the Supreme Court held that equitable claims, such as estoppel, should be decided by a court of law rather than by a zoning board of appeals composed of laypersons. *Bianco* does not, however, speak to the presentation of *additional* evidence in the trial court.

The plaintiffs' reliance on *Burns* v. *Board of Zoning Appeals*, Superior Court, judicial district of Fairfield, Docket No. 298475 (September 24, 1993), is equally misplaced. In *Burns*, an evidentiary hearing was held as a result of mutual agreement by both parties that additional evidence was needed to decide the equitable estoppel claim. The plaintiffs do not allege that there was any such agreement in this case.

In further contrast to *Bloom*, the record of the proceedings in the trial court definitively demonstrates that the plaintiffs were given a full opportunity to present their arguments in favor of an evidentiary hearing to the trial court. On April 20, 2001, the plaintiffs filed their motion to introduce additional evidence concerning their estoppel claim. The defendants duly objected. On June 13, 2001, the court granted the plaintiffs' motion in part, permitting the plaintiffs to file a supplemental brief discussing other decisions by the city relating to their claim of municipal estoppel. The plaintiffs apparently did not do so. Instead, at a hearing on October 22, 2001, plaintiffs' counsel stated, "I have determined that everything I need to submit by way of documentation is either already part of the record or was allowed to be considered by the court."

their presentation. They ignore the fact that the chairman afforded them an opportunity to supplement the record at a later date.

Nonetheless, on November 5, 2001, the plaintiffs filed an offer of proof in which they outlined additional evidence that they hoped to present at the evidentiary hearing and moved for permission to do so. They reiterated their claim that they were entitled to present oral testimony to support the credibility of their witness with respect to the seriousness of the losses that they had incurred in reliance on the September 28, 1999 certificate of zoning compliance issued by Gargiulo. The defendants objected to the motion and, after a hearing on January 31, 2002, the trial court denied it.

In light of the record before us, we conclude that the trial court did not abuse its discretion by denying the plaintiffs' motion for an evidentiary hearing to supplement the evidence with respect to municipal estoppel that they presented or could have presented to the zoning board. The record before the board was sufficient to permit the court to adjudicate the merits of the plaintiffs' claim. On the merits, we agree with the trial court's conclusion that the plaintiffs have not proven their claim of municipal estoppel.

The judgment is affirmed.

In this opinion the other judges concurred.