## WOODBURY DONUTS, LLC, ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF WOODBURY
## (AC 34000)

Gruendel, Alvord and Bear, Js.

---

Argued October 11—officially released December 25, 2012

*Franklin G. Pilicy*, for the appellants (plaintiffs).

*Thomas A. Kaelin*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiffs, Woodbury Donuts, LLC, and EYRE, LLC, appeal from the judgment of the trial court dismissing their administrative appeal from the decision of the defendant, the zoning board of appeals of the town of Woodbury (board). The board had upheld the town zoning enforcement officer's denial of the plaintiffs' application for a zoning permit to operate a Dunkin Donuts on Main Street South in Woodbury. On appeal, the plaintiffs claim that the court improperly determined that (1) there was substantial evidence in the record to support the board's conclusion that the proposed use constituted an impermissible expansion of a preexisting, legal nonconforming use and (2) the doctrine of municipal estoppel was not applicable under the circumstances of this case. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. EYRE, LLC, owns property at 787-807 Main Street South in Woodbury, which is located in the Middle Quarter District. Corey's restaurant, a tenant, was a 3000 square foot establishment that operated seasonally on a portion of that property. The restaurant opened in 1995 or 1996 and ceased operation in the fall of 2006. The building housing Corey's restaurant was a preexisting, legal nonconforming structure, and the use as a fast food restaurant was a preexisting, legal nonconforming use.[1]

---

[1] The board claims that Corey's use as a fast food restaurant was a permitted use because the zoning regulations, at the time of its operation, prohibited only "[f]ast food, *predominantly take-out* restaurants . . . ." (Emphasis added.) Woodbury Zoning Regs, art. II, § 5.2.3.1 (C). The board argues that the food served at Corey's restaurant was consumed *predominantly on-*

In 2006, EYRE, LLC, filed a special permit application with the town's zoning commission (commission), seeking approval to construct a 42,000 square foot commercial retail center on the property and to relocate Corey's restaurant into a conforming building to be constructed on the site. The commission approved the application on November 28, 2006. In that approval, the commission found, inter alia, that "the proposed site development and uses of the property within the Middle Quarter District, including the relocation of an existing legal non-conforming use within the same portion of the lot and as conditioned below, conform to the applicable standards of the Regulations . . . ." The approval was subject to several conditions, including the following: (1) "[a]ny variation from the approved Special Permit or Site Development Plans . . . shall require review and approval in accordance with Section 8.2.8 of the Regulations"; (2) "[t]he Developer shall obtain a Zoning Permit from the Zoning Enforcement Officer for each approved structure, including signage, and each use on the subject property";[2] and (3) "[u]ses permitted on the subject site pursuant to this Approval are as permitted by Zoning Regulations pertaining to [the] Middle Quarter [District]."

EYRE, LLC, and Corey's restaurant were unable to agree on terms for a new lease. Accordingly, EYRE, LLC, looked for a replacement tenant, and, on September 22, 2008, Woodbury Donuts, LLC, applied for a zoning

---

*site* and the use, therefore, was in compliance with the regulations. Accordingly, the board maintains that the use proposed by the plaintiffs, which the plaintiffs concede is a prohibited use in the Middle Quarter District, could not be considered the continuation of a preexisting, legal nonconforming use.

Because we affirm the judgment of the trial court on the ground decided by the trial court, we need not address the board's claim as an alternate ground for affirmance.

[2] It was to satisfy this condition that the plaintiffs applied to the zoning enforcement officer for a zoning permit to operate a Dunkin Donuts franchise at the property.

permit to operate a Dunkin Donuts franchise at the location originally planned for Corey's restaurant. By letter dated November 18, 2008, the zoning enforcement officer notified Woodbury Donuts, LLC, that its application had been denied for the following reasons: "The proposed use is not permitted under Section 5.2 of the Woodbury Zoning Regulations [and] is significantly different in character from and is an impermissible expansion of the previous non-conforming use."

The plaintiffs appealed to the board from the decision of the zoning enforcement officer pursuant to General Statutes § 8-6.[3] Following a four day public hearing, the board issued its decision on April 20, 2009. The board denied the plaintiffs' appeal and gave the following reasons for its decision: (1) the plaintiffs failed to demonstrate that the zoning enforcement officer's decision was in error; (2) the zoning permit was properly denied because the proposed use is not permitted under § 5.2 of the zoning regulations, is significantly different in character from the previous use and is an impermissible expansion of the previous use;[4] and (3) the zoning permit should not be issued for the additional reason that

[3] General Statutes § 8-6 (a) provides in relevant part: "The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . ."

[4] Article I, § 1.4.4.1 of the Woodbury zoning regulations provides in relevant part: "Such [nonconforming] use may continue subject to the provisions of this section, may be changed to an equally or less intensive non-conforming use providing a special exception is granted by the Zoning Board of Appeals as provided in Section 8.2, or may be changed to a conforming use."

Appendix A, titled "Definitions," of the Woodbury zoning regulations defines "expansion" as "an increase in area or volume occupied or devoted to a use; the increase in living space or occupant capacity of a structure or adding uses or structures accessory to a non-residential use or structure; *the addition of weeks or months to a use's operating season;* additional hours of operation; or the increase in net floor area or ground area devoted to a particular use." (Emphasis added.)

it would be in violation of § 1.4.4.2 of the zoning regulations.

The plaintiffs appealed from the board's decision to the trial court. See General Statutes § 8-8 (b). Among their claims, the plaintiffs alleged in their complaint that the board misinterpreted and misapplied the zoning regulations and that the proposed use as a fast food restaurant was a vested nonconforming use. On February 22, 2011, the plaintiffs filed a motion seeking permission to introduce evidence at the hearing to support their contention that the town was estopped from prohibiting the operation of a Dunkin Donuts franchise at the proposed location.[5] The court held a hearing on March 4, 2011, at which time it granted the plaintiffs' motion to present additional evidence. Thomas Briggs, the owner of EYRE, LLC, then testified as to the expenses the company incurred in connection with the construction of the building, which would have housed tenants including the Dunkin Donuts restaurant. Following the hearing, the parties filed posttrial briefs.

The court issued a memorandum of decision on May 25, 2011. After finding that the plaintiffs were aggrieved by the board's decision, the court addressed the parties' claims. Contrary to the board's position, the court concluded that Corey's restaurant had been a nonconforming rather than a conforming use of the property. See footnote 1 of this opinion. Following a summary of the evidence before the board, the court stated that the proposed year-round use as a Dunkin Donuts restaurant would expand, by between thirteen and twenty-one weeks, the previous seasonal use as Corey's restaurant.

[5] General Statutes § 8-8 (k) provides in relevant part: "The court shall review the proceedings of the board and shall allow any party to introduce evidence in addition to the contents of the record if . . . (2) it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. . . ."

The court determined that there was substantial evidence in the record to support the board's conclusion that the "proposed use was an impermissible expansion of a nonconforming use by the substantial extension and expansion of the time period in which the nonconforming Corey's restaurant was open for business." With respect to the plaintiffs' municipal estoppel claim, the court concluded: "[W]hile the court agrees that the [board] is estopped from taking any action to preclude the nonconforming Corey's restaurant use on the [p]remises, the court finds in the [board's] favor on [the] plaintiffs' estoppel claim with respect to the current application." The plaintiffs filed the present appeal after this court granted their petition for certification.

I

The plaintiffs' first claim is that the trial court improperly determined that there was substantial evidence in the record to support the board's conclusion that the proposed year-round use as a fast food restaurant was an impermissible expansion of the previous nonconforming use by Corey's as a seasonal fast food restaurant. Specifically, the plaintiffs argue that the 2006 special permit issued by the commission expressly authorized the proposed use as a fast food restaurant and that the proposed use was simply a continuation of the prior, legal nonconforming use as a fast food restaurant. The plaintiffs claim that the proposed year-round use was not an impermissible expansion of the previous seasonal use because the 2006 special permit did not contain any seasonal restrictions, and Woodbury's zoning regulations do not distinguish between seasonal and year-round use of properties. Additional facts are necessary for the resolution of this claim.

The record before the trial court included the exhibits submitted to the board and the transcripts from the

public hearing. From the evidence presented at the public hearing, the board reasonably could have found the following facts. At all relevant times, the zoning regulations for the Middle Quarter District expressly prohibited the use of any property within that district as a "[f]ast food, predominantly take-out [restaurant]." Woodbury Zoning Regs., art. II, § 5.2.3.1 (C). The Middle Quarter District was created in or about 1977. Prior to 1995 or 1996, when Corey's restaurant began its operation, the property had been occupied by an A&W Root Beer restaurant and later by a restaurant called Toppers.[6]

In 1995, Brian Elias[7] came before the commission seeking permission to change the use of the property from Toppers restaurant to Corey's restaurant. At that time, Elias represented that the proposed use would be seasonal[8] and that the restaurant's unwrapped food would be consumed primarily on-site.[9] According to Elias, the restaurant would be open for business from 11 a.m. to 9 p.m. daily during the months of May through November. The commission approved the proposed use as Corey's restaurant and considered it to be a continuation of a preexisting, legal nonconforming use.

In its first year of operation, Corey's restaurant may have remained open for all but two weeks. After that year, however, for the next eight to ten years, the business closed the week of Thanksgiving and reopened sometime in March of the following year. Corey's restaurant served food that was prepared on the premises.

[6] The attorney for the zoning enforcement officer stated at the public hearing that the A&W Root Beer restaurant and Toppers restaurant both operated on a seasonal basis.

[7] Brian Elias was the proprietor of Corey's restaurant.

[8] The building housing the restaurant had no heat. In 1999, two electric baseboard heaters were installed in the two bathrooms that were added to the building.

[9] Elias estimated that approximately 80 percent of the restaurant's patronage would be eating on-site.

Customers could eat their food outdoors at tables or inside of the building; there were a total of seventy-two seats. According to one resident of the town, the restaurant's building was a carport type structure that basically protected the customers from precipitation: "It was never walled, floored, heated, air conditioned and certainly not enclosed . . . ."

When EYRE, LLC, was unable to negotiate a renewal lease with Corey's restaurant for the proposed new building, Woodbury Donuts, LLC, became the proposed replacement tenant for that location. In the September 22, 2008 application for a zoning permit to operate a Dunkin Donuts franchise, the description of the proposed use stated that (1) the business would include a small seating area for customers consisting of eight tables with a total of sixteen seats, (2) the hours of operation would be 5 a.m. to 9 p.m. seven days a week, (3) the store would employ thirteen to seventeen employees, with two to seven employees present on-site at any given time, and (4) bakery deliveries to the site would be made before 5 a.m. During the public hearing, the plaintiffs confirmed that the proposed use would be year-round.

When the commission issued the 2006 special permit allowing the construction of a 42,000 square foot commercial retail center and the "relocation of an existing legal non-conforming use within the same portion of the lot," there had been no mention of a Dunkin Donuts franchise as a proposed use. The application for the special permit expressly stated that "[t]he proposed nonconforming Corey's use is being relocated to proposed Building A, as shown on the attached plans." At the time of the hearing before the commission, the attorney for the applicant, when asked if any tenants were known, responded that Corey's restaurant was the only "certain" tenant for the new development. When the chairman of the commission asked about the

relocation of Corey's restaurant, the attorney responded that Corey's was a preexisting, nonconforming fast food restaurant, which normally is not permitted, but that it would continue to be located within the same portion of the property. On the basis of that evidence in the record, the board reasonably could have concluded that the commission considered Corey's restaurant to be the preexisting, legal nonconforming use to be relocated within the same portion of the lot of the subject property when it granted the 2006 application for a special permit.

Now the plaintiffs claim that the 2006 special permit authorized the use of any fast food restaurant at the proposed location. They argue that the expanded hours and months of operation for the proposed Dunkin Donuts franchise represented an intensification, not an expansion, of the previous legal nonconforming use. For that reason, they claim that the board improperly upheld the decision of the zoning enforcement officer denying their application for a zoning permit. We disagree.

We begin by setting forth the legal principles and standard of review that guide our analysis. Our starting point is the decision of the board following the zoning enforcement officer's denial of the plaintiffs' application for a zoning permit. "In *Caserta* v. *Zoning Board of Appeals*, 226 Conn. 80, 82, 626 A.2d 744 (1993), our Supreme Court concluded that 'following an appeal from the action of a zoning enforcement officer to a zoning board of appeals, a court reviewing the decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the board and the record before the board.' We also are mindful that the zoning board of appeals makes a de novo determination of the issue before it, without deference to the actions of the zoning enforcement officer." *Mountain Brook Assn., Inc.* v. *Zoning*

*Board of Appeals*, 133 Conn. App. 359, 363–64, 37 A.3d 748 (2012).

"In reviewing the actions of a zoning board of appeals, we note that the board is endowed with liberal discretion and that its actions are subject to review by the courts only to determine whether they are unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . . [A] zoning board of appeals hears and decides an appeal de novo. . . . It is the board's responsibility, pursuant to the statutorily required hearing, to find the facts and to apply the pertinent zoning regulations to those facts. . . . In doing so, the board is endowed with a liberal discretion . . . . Indeed, under appropriate circumstances, the board may act upon facts which are known to it even though they are not produced at the hearing. . . . Upon an appeal from the board, the court must focus on the decision of the board and the record before it. . . .

"It is well settled that the courts should not substitute their own judgment for that of the board and that the decisions of the board will not be disturbed as long as an honest judgment has been reasonably and fairly made after a full hearing. . . . The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings. . . . Upon an appeal from the judgment of the trial court, we review the record to see if there is factual support for the board's decision, not for the contentions of the applicant . . . to determine whether the judgment was clearly erroneous or contrary to law." (Citations omitted; internal quotation marks omitted.) *Wing* v. *Zoning Board of Appeals*, 61 Conn. App. 639, 643–44, 767 A.2d 131, cert. denied, 256 Conn. 908, 772 A.2d 602 (2001).

"In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule,[10] according to which, [c]onclusions reached by [the board] must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [board]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [board] supports the decision reached. . . . If the trial court finds that there is substantial evidence to support a zoning board's findings, it cannot substitute its judgment for that of the board. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any

[10] "This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . . [It] imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) *Huck* v. *Inland Wetland & Watercourses Agency*, 203 Conn. 525, 541, 525 A.2d 940 (1987).

one of the reasons given." (Internal quotation marks omitted.) *Walgreen Eastern Co.* v. *Zoning Board of Appeals,* 130 Conn. App. 422, 428, 24 A.3d 27, cert. denied, 302 Conn. 930, 28 A.3d 346 (2011).

In the present case, the trial court was required to determine whether there was substantial evidence in the record to support the board's determination that the plaintiffs' proposed year-round use of the property as a Dunkin Donuts franchise was an impermissible expansion of the preexisting, legal nonconforming use established by Corey's as a seasonal fast food restaurant.[11] "A nonconforming use is merely an existing use the continuance of which is authorized by the zoning regulations. . . . To be a nonconforming use the use must be actual. It is not enough that it be a contemplated use nor that the property was bought for the particular use. The property must be so utilized as to be irrevocably committed to that use. . . . [T]o be irrevocably committed to a particular use, there must have been a significant amount of preliminary or preparatory work done on the property prior to the enactment of the zoning regulations which unequivocally indicates that the property was going to be used for that particular purpose." (Citations omitted; internal quotation marks omitted.) *Wing* v. *Zoning Board of Appeals,* supra, 61 Conn. App. 644–45.

"Zoning regulations in general seek the elimination of nonconforming uses, not their creation or enlargement." *Planning & Zoning Commission* v. *Craft,* 12 Conn. App. 90, 96, 529 A.2d 1328, cert. denied, 205 Conn. 804, 531 A.2d 937 (1987). "[T]he accepted policy of

---

[11] "The appropriate standard of review of a zoning agency's finding that a current use represents an expansion of a prior nonconforming use . . . is whether that finding is supported by substantial evidence." (Internal quotation marks omitted.) *Hall* v. *Brazzale,* 31 Conn. App. 342, 344 n.1, 624 A.2d 916, cert. denied, 227 Conn. 905, 632 A.2d 691 (1993).

zoning . . . is to prevent the extension of nonconforming uses . . . and that it is the indisputable goal of zoning to reduce nonconforming to conforming uses with all the speed justice will tolerate. . . . Nevertheless, the rule concerning the continuance of a nonconforming use protects the right of a user to continue *the same use of the property as it existed before the date of the adoption of the zoning regulations.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Helbig* v. *Zoning Commission,* 185 Conn. 294, 306, 440 A.2d 940 (1981). "Where a nonconformity exists, it is a vested right which adheres to the land itself. And the right is not forfeited by a purchaser who takes with knowledge of the regulations which are inconsistent with the existing use." (Internal quotation marks omitted.) *Taylor* v. *Zoning Board of Appeals,* 65 Conn. App. 687, 694, 783 A.2d 526 (2001).

The nonconforming use established by Corey's was a seasonal fast food restaurant that operated out of a nonconforming structure. The evidence before the board was that Corey's restaurant intended to serve customers between 11 a.m. and 9 p.m. during the months of May through November. The evidence also indicated that Corey's restaurant may have attempted to remain open year-round for the first year of its operation but was unable to do so because the building was not heated. Thereafter, Corey's restaurant opened sometime in March of each year and closed during the week of Thanksgiving; it finally ceased operations in the fall of 2006. The issue is whether the plaintiffs' proposed year-round use as a Dunkin Donuts franchise was an impermissible expansion of the seasonal use actually established by Corey's restaurant.

Our Supreme Court previously has held that "a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use. . . . A change in the character of a use,

however, does constitute an unlawful extension of the prior use." (Citations omitted.) *Helicopter Associates, Inc.* v. *Stamford*, 201 Conn. 700, 716, 519 A.2d 49 (1986). "In deciding whether the current activity is within the scope of a nonconforming use consideration should be given to three factors: (1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." *Zachs* v. *Zoning Board of Appeals*, 218 Conn. 324, 332, 589 A.2d 351 (1991).

Connecticut case law supports the board's determination that the proposed change of a nonconforming use from seasonal to year-round would constitute a change in character of the previous use and, therefore, would be an impermissible expansion of that use. "To be illegal, an extension of a permitted use need not necessarily consist of additional uses of a different character. It may consist of uses of the same character carried on over a substantially additional period of the year. . . . The legality of an extension of a nonconforming use is essentially a question of fact." (Citations omitted; internal quotation marks omitted.) *Planning & Zoning Commission* v. *Craft*, supra, 12 Conn. App. 96–97.

As early as 1958, our Supreme Court acknowledged that the extension of a nonconforming use over a substantially additional period of the year constituted an illegal use. In *Beerwort* v. *Zoning Board of Appeals*, 144 Conn. 731, 732, 137 A.2d 756 (1958), the plaintiff operated a trailer park on a seasonal basis. He made some improvements in the park, prior to the town's adoption of zoning regulations, with the expectation that he would operate it on a year-round basis. Id. After the adoption of the regulations, he began operating the

park during the winter months, and the zoning enforcement officer issued a cease and desist order for his illegal extension of a nonconforming use. Id., 732–33. The plaintiff appealed from the order to the zoning board of appeals, which sustained the order of the zoning enforcement officer. Id., 733. The Supreme Court stated: "Here there was a prolongation of a nonconforming use into a season in which the use had not existed at the time of the passage of the regulations. Year-round use of the trailer park may then have been contemplated by the owner, but it had never become an accomplished fact, and the actual use was limited to the warmer months. Any extension of the use of the park beyond the months during which it had previously been used would be in fact, as well as in law, the extension of a nonconforming use at the expense of a conforming one." Id., 734.

Similarly, in *Weyls* v. *Zoning Board of Appeals*, 161 Conn. 516, 290 A.2d 350 (1971), our Supreme Court concluded that the plaintiff's year-round occupancy of a cabin that had been occupied on a seasonal basis prior to the adoption of zoning regulations constituted an impermissible extension of a nonconforming use. The court stated: "An increase in the use of property from the summer months to a year-round use is clearly a type of enlargement intended to be proscribed by the Trumbull zoning regulations." Id., 520.

Again, our Supreme Court affirmed this principle in *Cummings* v. *Tripp*, 204 Conn. 67, 527 A.2d 230 (1987), when it upheld the trial court's finding of an illegal extension of a nonconforming use. In that case, the defendant had purchased cottages that had been rented, in accordance with a nonconforming use, during the summer months. After renovating the cottages, the defendant proceeded to rent them year-round. Id., 70–71. The court concluded that the renovation and year-round rental constituted a new business undertaking

and was a substantial departure from the original nature and purpose of the legal nonconforming use. Id., 85. Significantly, the defendant in *Cummings* argued, as do the plaintiffs in the present case, that because the zoning regulations did not make a distinction between seasonal and year-round use, there was no basis to prohibit year-round use of seasonal buildings. The Supreme Court was not persuaded: "We disagree that such a provision in the zoning regulations is a prerequisite to a judicial finding that a change from seasonal to nonseasonal use is an extension of a nonconforming use." Id., 86 n.16.

The board in the present case, after a four day public hearing, concluded that the proposed year-round use as a Dunkin Donuts franchise was significantly different in character from the previous seasonal use as Corey's restaurant and was an impermissible expansion of the previous nonconforming use. That conclusion finds support in the record, in the town's zoning regulations and in our case law. The board focused on the expansion of the business into additional months of the year. Further, because the Dunkin Donuts intended to open at 5 a.m. and receive truck deliveries prior to 5 a.m., the board members voiced concerns that the character of the use would change by adversely impacting the residents of a nearby elderly housing development. Further, the reduction in seating available for customers supported the inference that the proposed use primarily would be take-out whereas the proprietor of Corey's restaurant, in 1995, stated that 80 percent of Corey's patronage would be eating on-site. For the foregoing reasons, we conclude that there was substantial evidence to support the board's determination that the proposed use was an impermissible extension of the previous legal, nonconforming use.

II

The plaintiffs further claim that the doctrine of municipal estoppel is applicable because they reasonably

relied on the 2006 special permit issued by the commission and made significant expenditures in demolishing the old Corey's restaurant structure and constructing the new building to house the Dunkin Donuts franchise. They argue that the 2006 special permit expressly authorized the continuation of a fast food restaurant and that the board should be estopped from refusing to issue the zoning permit for the proposed use.

We first set forth the appropriate principles guiding our review. Our Supreme Court has acknowledged that there are situations where the doctrine of estoppel may be applicable to municipalities in the enforcement of zoning laws. See *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 204, 658 A.2d 559 (1995); *Dupuis* v. *Submarine Base Credit Union, Inc.*, 170 Conn. 344, 354, 365 A.2d 1093 (1976). "There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done. . . . [I]n order for a court to invoke municipal estoppel, the aggrieved party must establish that: (1) an authorized agent of the municipality had done or said something calculated or intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts; and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents." (Citation omitted; internal quotation marks omitted.) *O'Connor* v. *Waterbury*, 286 Conn. 732, 757–58, 945 A.2d 936 (2008).

"[B]ecause municipal estoppel should be invoked only with great caution, our case law clearly imposes a substantial burden of proof on the party who seeks to do so." *Cortese* v. *Planning & Zoning Board of Appeals*, 274 Conn. 411, 418–19, 876 A.2d 540 (2005). The question of whether a plaintiff has met his burden to establish the elements of estoppel is a question of fact. See *Russo* v. *Waterbury*, 304 Conn. 710, 737, 41 A.3d 1033 (2012). "[A] claim of municipal estoppel is . . . inherently fact bound. . . . The party claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Citation omitted; internal quotation marks omitted.) *Conservation Commission* v. *Red 11, LLC*, 119 Conn. App. 377, 387, 987 A.2d 398, cert. denied, 295 Conn. 924, 991 A.2d 566 (2010).[12]

In the present case, the 2006 special permit permitted the "relocation of an existing legal non-conforming use within the same portion of the lot." As discussed in part I of this opinion, the existing legal nonconforming use of the property at that time was a *seasonal* fast food restaurant. The special permit did not authorize the expansion of that use; it allowed only the continuation of the use that then existed. Although it was not required that Corey's restaurant move into the new

---

[12] Because municipal estoppel is an equitable claim, it is for the trial court and not the board to determine whether the conduct of municipal officials justifies the invocation of the doctrine. See *Bianco* v. *Darien*, 157 Conn. 548, 554–55, 254 A.2d 898 (1969); *Collins Group, Inc.* v. *Zoning Board of Appeals*, 78 Conn. App. 561, 581, 827 A.2d 764, cert. denied, 266 Conn. 911, 832 A.2d 68 (2003).

building, it was required that a use of the same character as Corey's restaurant continue in the new building.

As the trial court aptly stated: "The only way to have a fast food restaurant in any of the five buildings the plaintiffs propose to build is for that restaurant to be a continuation of the nonconforming Corey's restaurant use. . . . [T]he proposed usage must not be a significant impermissible expansion of that nonconforming use. . . . It is clear that the [plaintiffs were] not given license to put any entity into the five buildings on the [p]remises, but knowingly built such buildings with a known restriction. . . . [W]hile the court agrees that the [board] is estopped from taking any action to preclude the nonconforming Corey's restaurant use on the [p]remises, the court finds in the [board's] favor on [the] plaintiffs' estoppel claim with respect to the current application." We conclude that the court did not improperly determine that the plaintiffs failed to prove their claim of municipal estoppel under the circumstances of this case.

The judgment is affirmed.

In this opinion the other judges concurred.